Filed 1/13/16

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| SAFE LIFE CAREGIVERS et al., | B257809 |
| Plaintiffs and Appellants, v. | (Los Angeles County Super. Ct. No. BC521581) |
| CITY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Amy Hogue, Judge.  Affirmed.

Law Offices of Stanley H. Kimmel and Stanley H. Kimmel for Plaintiffs and Appellants.

Michael N. Feuer, City Attorney, Terry P. Kaufmann-Macias, Assistant City Attorney, and Steven M. Blau, Deputy City Attorney, for Defendant and Respondent.

_____

---

[*]     The opinion is certified for publication with the exception of sections C.2.-C.14 of the Discussion.

In this appeal we reiterate what other appellate courts, including our Supreme Court, have already held – there is no constitutional or statutory right to possess, cultivate, distribute, or transport marijuana for medical purposes. (*City of Riverside v. Inland Empire Patients Health and Wellness Center, Inc.* (2013) 56 Cal.4th 729, 739 (*Riverside*).) We apply that rule of law to appellants' challenge to Proposition D (Prop D), the current medical marijuana ordinance of the City of Los Angeles (the City), enacted by voters in 2013. We conclude for that and other reasons the trial court correctly dismissed appellants' complaint.

By way of further introduction, this is the first of two related appeals challenging the medical marijuana ordinances in the City. In this appeal, nearly 20 medical marijuana collectives and a handful of medical marijuana patients, who are officers of the collectives, bring numerous challenges to Prop D.[1] None of the appellants' arguments relies on any facts specific to any individual appellant; we therefore consider their arguments collectively. The sole defendant is the City. The City prevailed on a demurrer to appellants' first amended complaint. Appellants seek leave to amend their complaint to raise a previously unpled challenge to Prop D. We conclude that Prop D was a properly enacted ordinance, reject all of appellants' other arguments, and affirm.

---

[1] Appellants here are: (1) Safe Life Caregivers; (2) Optimal Global Healing; (3) 420 Caregivers; (4) Ultracure; (5) Collective Growers Foundation; (6) La Luna Collective; (7) Mid-City Med Center, Inc.; (8) Practical Cure, Inc.; (9) Circle G Health Group; (10) Quality Genetix; (11) Alternameds; (12) Associated Patients Collective; (13) Precision Medical Caregivers, Inc.; (14) LA Collective Herbal, Inc.; (15) Green Cross LAX; (16) Pacific Highway Caregivers, Inc.; (17) View Park Care Givers, Inc.; (18) Midcity Wellness Center; (19) Demarcio Posey; (20) Jose Fernandez; (21) Eugene Wale; (22) Shon Killman; (23) Jana Cahn; (24) Cesar Aguirre; and (25) Manuel Madrigal.

In the related matter, *Melrose Quality Pain Relief v. City of Los Angeles,* B257789, a single collective and its owners bring challenges to the City's prior ordinances and Prop D, and assert several causes of action arising out of a raid on the premises.

*FACTUAL AND PROCEDURAL BACKGROUND*

Appellants' principal charge on appeal is a multi-faceted attack on the process by which Prop D was enacted. They also challenge the substantive provisions of the ordinance, particularly as those terms relate to registration under the City's prior medical marijuana ordinances. The factual history of this case is, as it turns out, the legal history of medical marijuana in Los Angeles.

A.     *State Statutes – CUA and MMPA*

The history of legalizing medical marijuana in California begins with the Compassionate Use Act of 1996 (CUA) enacted by statewide initiative. The CUA is codified at Health and Safety Code section 11362.5. It provides that two specific criminal penalties (relating to the possession and cultivation of marijuana) "shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." (Health & Saf. Code, § 11362.5, subd. (d).) While subdivision (a) of the statute sets forth broad purposes for the statute – "[t]o ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician . . ." – the substantive provisions of the law are actually quite narrow, providing not an affirmative right, but merely a limited criminal immunity. (*Riverside, supra,* 56 Cal.4th at p. 739; *Conejo Wellness Center, Inc. v. City of Agoura Hills* (2013) 214 Cal.App.4th 1534, 1544 (*Conejo*).)

In 2003, the Legislature followed the CUA with the Medical Marijuana Program Act (MMPA). (Health & Saf. Code, § 11362.7 et seq.) The MMPA expands the criminal immunities of the CUA; qualified patients are now immune from liability for violating six different sections of the Health and Safety Code. (Health & Saf. Code, § 11362.765.) The MMPA also discusses, for the first time, the collective cultivation of marijuana. It provides that qualified patients and their primary caregivers "who associate within the State of California in order collectively or cooperatively to cultivate marijuana for

3

medical purposes, shall not solely on the basis of that fact be subject to state criminal sanctions" under the same six specified sections of the Health and Safety Code. (Health & Saf. Code, § 11362.775.)

Together, the CUA and MMPA constitute "limited exceptions to the sanctions of this state's criminal and nuisance laws in cases where marijuana is possessed, cultivated, distributed, and transported for medical purposes." (*Riverside, supra,* 56 Cal.4th at p. 739.) They have no effect on the federal ban on marijuana use. (*Id*. at p. 740.) Nor do they create a state statutory *right* to use, cultivate, or collectively cultivate medical marijuana. (*Id*. at p. 762; *420 Caregivers, LLC v. City of Los Angeles* (2012) 219 Cal.App.4th 1316, 1342 (*420 Caregivers*); *County of Los Angeles v. Hill* (2011) 192 Cal.App.4th 861, 869 (*Hill*); *People v. Urziceanu* (2005) 132 Cal.App.4th 747, 773 (*Urziceanu*).)

B.    *The City's First Attempt at Legislation – Interim Control Ordinance*

In 2007, the City made its first attempt to regulate medical marijuana dispensaries, "[i]n response to citizen complaints and law enforcement concerns about the proliferation of storefront medical marijuana dispensaries within City limits." (*420 Caregivers, supra,* 219 Cal.App.4th at p. 1326.) City Ordinance No. 179027 provided as a temporary measure that no "Medical Marijuana Dispensaries" could be established or operated within the City. "Medical Marijuana Dispensary" was broadly defined to mean "any use, facility or location, including but not limited to a retail store, office building or structure that distributes, transmits, gives, dispenses, facilitates or otherwise provides marijuana in any manner, in accordance with State law, in particular [the CUA and MMPA] inclusive." The ordinance came with a major exception:  its prohibition did not apply to any dispensary established before the ordinance's effective date (September 14, 2007) and operating in accordance with state law, if the owner or operator of the dispensary were to register with the City Clerk by filing certain identified documents within 60 days (by November 13, 2007). (*420 Caregivers,* at pp. 1326-1327.) This Interim Control

4

Ordinance was intended to allow the City the time it needed to develop a comprehensive strategy for regulating medical marijuana dispensaries.[2]

C.      *The City's Second Attempt – Grandfather Prior Registrant Ordinance*

In 2010, the City passed its second attempt to regulate dispensaries. City Ordinance No. 181069 was the City's try at a more permanent ordinance. It imposed regulations on medical marijuana collectives.[3] It defined a "collective" as an "association, composed solely of four or more qualified patients . . . and designated primary caregivers . . . who associate at a particular location to collectively or cooperatively cultivate marijuana for medical purposes, in strict accordance with [the CUA and MMPA]." (L.A. Mun. Code, fmr. § 45.19.6.1.) The ordinance required all collectives to register, and facially capped the maximum number of collectives in the City at 70, to be proportionally distributed by population. (L.A. Mun. Code, fmr. § 45.19.6.2.) However, the ordinance provided that the number of collectives could in fact exceed 70, as it included a grandfather clause that allowed previously existing collectives to remain if they were, among other things, properly registered under the Interim Control Ordinance.[4] It appeared that there were substantially more than 70 collectives in operation which could qualify under the grandfather clause; as such, if it had become

---

[2]      Because the ordinance is called an "Interim Control Ordinance," the parties refer to it as the "ICO." In the interests of clarity, we use acronyms to refer only to the state statutes (such as CUA and MMPA) as those shorthands are used regularly in appellate opinions, but, to avoid acronym glut, we use descriptive titles for the City's series of ordinances.

[3]      As we shall discuss, appellants find it significant that the Interim Control Ordinance applied to *dispensaries* while the Grandfather Prior Registrant Ordinance applied to *collectives*. It is not. (*420 Caregivers, supra,* 219 Cal.App.4th at pp. 1339-1340.)

[4]      Other requirements included that the grandfathered collective had continuously operated under the same ownership and had not been cited by the City for a nuisance or public safety violation.

fully operational, the Grandfather Prior Registrant Ordinance would likely have had the effect of prohibiting all collectives which had not previously registered under the Interim Control Ordinance.

D.    *The City's Third Attempt – The Grandfather/Lottery Ordinance*

Many collectives brought suit against the City, challenging the terms of the Grandfather Prior Registrant Ordinance.[5]  The collectives sought a preliminary injunction, and the trial court concluded, among other things, that the Grandfather Prior Registrant Ordinance denied equal protection to collectives which had not registered under the Interim Control Ordinance.  (*420 Caregivers, supra,* 219 Cal.App.4th at p. 1330.)

The City then enacted a third ordinance, as an urgency measure, to modify the Grandfather Prior Registrant Ordinance to respond to the trial court's ruling while the City's appeal of the preliminary injunction was pending.  City Ordinance No. 181530 changed the grandfathering provision of the Grandfather Prior Registrant ordinance to allow all collectives which had been in operation on or before September 14, 2007 to register for the right to participate in a lottery, from which 100 collectives would be chosen for inspection and, if all other requirements were satisfied, registration.  Pursuant to the terms of the ordinance, all collectives that met the prerequisites for the lottery were *required* to register for it shortly after the ordinance became effective.[6]  We call this the Grandfather/Lottery Ordinance.

E.    *Appeal of the Injunction*

The City appealed the preliminary injunction against the Grandfather Prior Registrant Ordinance, and, on July 3, 2012, we issued our opinion in *420 Caregivers* reversing the preliminary injunction and upholding the original grandfathering provision

---

[5]    At least some of those collectives are appellants in this case.

[6]    It is unclear whether the lottery ever occurred.

6

of the Grandfather Prior Registrant Ordinance. (*420 Caregivers, supra,* 219 Cal.App.4th at pp. 1338-1339.) Specifically, we recognized that straightforward grandfathering provisions generally survive rational relation equal protection review, and we concluded that the further requirement of compliance with prior registration laws was a similarly valid basis on which to distinguish between businesses. (*Ibid.*) The case was not immediately final, however; review was granted on September 19, 2012, while the Supreme Court was considering, in *Riverside,* issues of state law preemption of local medical marijuana regulation. Ultimately, the Supreme Court would conclude that state law *does not* preempt local medical marijuana regulation, and upheld a city's total ban on collectives. (*Riverside, supra,* 56 Cal.4th at p. 762.) As a result, it dismissed review in *420 Caregivers* and, in November 2013, ordered partial publication of the *420 Caregivers* opinion.[7]

### F.     *The City's Fourth Attempt – A Brief Ban*

In July 2012, prior to *Riverside* and finality of *420 Caregivers,* the City enacted City Ordinance No. 182190, which banned nearly all collectives. A referendary petition was brought to the City Council regarding the ordinance and, after considering comments, objections and proposals from the public, the City Council repealed the ban on October 9, 2012. (L.A. Ord. No. 182286.) This particular ordinance has no effect on our disposition of the appeal. It is included only for historical completeness.

### G.     *The Enactment of Prop D*

It was in this environment that Prop D came to be. On January 29, 2013, some four months after the repeal of the prior ban on collectives, the City Council introduced, and on February 5, 2013, it passed, an ordinance calling a special election for a public

---

[7]     The Supreme Court excluded from publication this court's discussion of preemption issues which the Supreme Court resolved in *Riverside*.

7

vote on Prop D.  (L.A. Ord. No. 182443.)  On May 21, 2013, the voters approved Prop D by majority vote.

Prop D enacted City Ordinance No. 182580, which repealed the existing sections of the municipal code relating to medical marijuana, and enacted new provisions.  Under Prop D, a "medical marijuana business" is defined as any "location where marijuana is cultivated, processed, distributed, and delivered, or given away to a qualified patient . . . or a primary caregiver."  (L.A. Mun. Code, § 45.19.6.1, subd. A.)  Prop D then provides that it is "unlawful to own, establish, operate, use, or permit the establishment or operation of a medical marijuana business . . ." in the City.  (L.A. Mun. Code, § 45.19.6.2, subd. A.)  The next section of Prop D, however, provides an exception for medical marijuana businesses that meet a litany of requirements, the most important of which for our purposes is that the medical marijuana business must have timely registered under *both* the Interim Control Ordinance and the Grandfather/Lottery Ordinance.  (L.A. Mun. Code, § 45.19.6.3, subds. B & C.)  Other requirements include restrictions on hours of operation, limits on proximity to land zoned residential, and limits on proximity to schools, parks, religious institutions, and other medical marijuana businesses.  (L.A. Mun. Code, § 45.19.6.3, subds. G, K & L.)

Just as the CUA and MMPA provide only immunities against certain criminal statutes, not a right to use and collectively cultivate medical marijuana, (*Riverside, supra,* 56 Cal.4th at pp. 739, 762-763), Prop D does not provide a right for these excepted medical marijuana businesses to operate, but only limited immunity.  Los Angeles Municipal Code section 45.19.6.3 provides as follows:  "Notwithstanding the activities prohibited by this Article, and notwithstanding that the medical marijuana business is not and shall not become a permitted use in the City for as long as this Article remains in effect, a medical marijuana business shall not be subject to the remedies set forth in Los Angeles Municipal Code Sections 11.00 [public nuisance and misdemeanor] or 12.27.1 [administrative nuisance abatement proceedings] solely on the basis of:  (1) an activity prohibited by Section 45.19.6.2 [Prop D's ban on medical marijuana businesses]; and (2) the fact that medical marijuana business is not a permitted use in the City, . . . only if

8

that medical marijuana business does not violate any of the [enumerated] medical marijuana business restrictions."

H.      *Appellants' Operative Complaint*

Appellants filed their complaint on September 16, 2013, and their operative first amended complaint two days later.  The operative complaint contains 15 causes of action challenging Prop D.  Briefly stated, the complaint alleges that Prop D:

First Cause of Action:  denies appellants procedural and substantive due process;

Second Cause of Action:  violates their right to equal protection;

Third Cause of Action:  is an unconstitutional special law that favors old collectives over new ones (Cal. Const., art. IV, § 16);

Fourth Cause of Action:  unconstitutionally grants special privileges and immunities to some pre-existing non-conforming collectives, but not others (Cal. Const., art. 1, § 7(b));

Fifth Cause of Action:  is preempted by Health and Safety Code section 11570, governing drug house abatement;

Sixth Cause of Action:  is not a proper exercise of local regulatory power under *Riverside*;

Eight Cause of Action:  violates appellants' rights to privacy and association;

Ninth Cause of Action:  constitutes improper land use discrimination based on disability (Gov. Code, § 65008);

Tenth Cause of Action:  constitutes improper discrimination by a business establishment (the City) on the basis of medical condition (Civ. Code, § 52);

Eleventh Cause of Action:  threatens appellants with criminal sanctions for exercising their state rights to use and collectively cultivate medical marijuana (Civ. Code, § 52.1);

Twelfth Cause of Action:  constitutes disability discrimination by the City (Gov. Code, § 11135); and

9

Thirteenth Cause of Action: constitutes an improper taking without just compensation.

The complaint also alleges:

Fourteenth Cause of Action: that the City's passage of a motion to instruct the Los Angeles Police Department (LAPD) to work with the federal government to create a citywide enforcement strategy is a waste of public funds;

Fifteenth Cause of Action: certain document disclosure provisions of Prop D violate appellants' Fifth Amendment right against self-incrimination; and

Sixteenth Cause of Action: Prop D unnecessarily regulates access to medical marijuana without a rational basis or compelling reason.[8]

The City demurred, arguing, in large part, that the court decisions in *Riverside* and *420 Caregivers* barred many of appellants' causes of action. Additional arguments addressed other causes of action.

I.      *Appellants' New Theory – City Charter Section 558*

After the City demurred, but before appellants opposed the demurrer, appellants moved ex parte for a temporary restraining order (TRO) prohibiting enforcement of Prop D. The basis for appellants' motion was their new theory that Prop D was void ab initio because it was adopted in violation of City Charter section 558. That section sets forth procedures to be applied "to the adoption, amendment or repeal of ordinances, orders or resolutions by the Council" concerning zoning or land use. Among other procedures, Charter section 558, subdivision (b)(2) requires that, after initiation, such a proposed ordinance is to be referred to the City Planning Commission before action by the City Council. Appellants argued that, because Prop D was not referred to the Planning Commission, it was void.

---

[8]      The complaint actually alleges 17 causes of action. One, alleging Prop D violates the single subject rule (7th cause of action), was voluntarily dismissed on appellants' motion. Another, seeking attorney's fees under Code of Civil Procedure section 1021.5 (17th cause of action), is concededly seeking only a remedy and is not a valid cause of action standing alone. We therefore do not consider those causes of action further.

10

The City opposed the application for a TRO arguing that Charter section 558 applies to the adoption of *ordinances* "by the Council," while Prop D was adopted by the *electorate*. The City therefore took the position that no submission to the Planning Commission was required, and Prop D was properly adopted. The trial court denied the TRO.[9]

J.      *The Court Sustains the Demurrer*

In response to the City's demurrer, appellants argued that *Riverside* and *420 Caregivers* were distinguishable – in part because appellants had a *right* that the City would comply with Charter section 558. In other words, appellants incorporated their argument that Prop D was void ab initio into an argument that Prop D's substantive provisions violated their rights.[10] At the hearing on the demurrer, the trial court specifically asked appellants' counsel how the complaint would be amended if leave were granted. Counsel responded that appellants would flesh out their argument based on Charter section 558. The court replied that it was accepting appellants' allegations regarding Charter section 558 and considering them as if formally made.

The court sustained the demurrer without leave to amend. The court addressed each cause of action and concluded none stated a claim. Specifically, the court found that most of appellants' complaint was barred by *Riverside* and *420 Caregivers*. The court rejected appellants' Charter section 558 argument, concluding the provision simply did not apply to ordinances adopted by referendum.

---

[9]     On appeal, appellants do not challenge the denial of their request for a TRO. They claim the trial court erred by subsequently sustaining the City's demurrer despite their Charter section 558 argument and by refusing to allow them leave to amend to better plead that theory.

[10]    At the hearing on the demurrer, appellants' counsel repeated appellants' Charter section 558 argument. When the court asked to which causes of action the argument applied, counsel replied, "I think it's an overarching problem for all the causes of action."

K.    *The Court Denies Appellants' Motion for Reconsideration*

Appellants then moved for reconsideration, in an attempt to better allege their Charter section 558 argument.  The court denied the motion.

L.    *Judgment and Appeal*

Judgment of dismissal was entered on June 6, 2014.  Appellants filed a timely notice of appeal.[11]

M.    *Appellants' New Theory on Appeal – Government Code Section 65804*

On appeal, appellants argue for the first time they should be granted leave to amend to assert a new theory -- that Prop D was adopted in violation of Government Code section 65804, a section of the state Zoning Act, which imposes minimal procedural standards for city zoning hearings.  This argument was not advanced either in opposition to the demurrer or in support of the TRO.  We consider this argument in our Discussion section.

It is not entirely clear from appellants' briefing which causes of action, and which arguments, appellants intend to pursue on appeal.[12]  In an abundance of caution – and because we conclude none of appellants' arguments has merit  – we address each of them.  We first consider appellants' arguments based on the alleged improper enactment of Prop D – including the Charter section 558 and Government Code section 65804 arguments to which appellants devote the bulk of their briefing.  We then turn to the

---

[11]    On appeal, the City filed a request for judicial notice of numerous City ordinances, Charter provisions, municipal code provisions, and other legislative materials. Appellants filed no opposition.  We grant the request.

[12]    For example, the argument section of appellants' opening brief on appeal does not mention Charter section 558 at all.  (The only reference to Charter section 558 is on page 6, where appellants simply indicate the basis for the trial court's ruling on the City's demurrer.)  However, after the City argued in its respondent's brief that Prop D did not violate Charter section 558, appellants picked up the argument appellants made in the trial court and addressed it at length in their reply brief.

challenges to the substance of Prop D on which appellants' complaint was in fact founded.

## *DISCUSSION*

A.      *Standard of Review*

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "To meet [the] burden of showing abuse of discretion, the plaintiff must show how the complaint can be amended to state a cause of action. [Citation.] However, such a showing need not be made in the trial court so long as it is made to the reviewing court." (*William S. Hart Union High School Dist. v. Regional Planning Com.* (1991) 226 Cal.App.3d 1612, 1621.)

B.      *Prop D was Lawfully Enacted by Referendum*

Appellants' challenge to the enactment of Prop D encompasses four different arguments. First, appellants argue that Prop D was enacted in violation of Government Code section 65804. Second, appellants argue that recently enacted legislation supports their Government Code section 65804 argument. Third, appellants argue that Prop D was enacted in violation of Charter section 558. Fourth, appellants argue that Prop D grants the equivalent of a conditional use permit or variance to the grandfathered collectives,

13

without satisfying the requirements for a conditional use permit or variance. Each argument is unavailing.

1. *Prop D's Enactment Did Not Violate Government Code Section 65804*

Government Code section 65804 provides for certain minimal procedural requirements for all local zoning hearings.[13] The statute is part of the state's Zoning Act. While the bulk of the Zoning Act's requirements do not apply to charter cities, such as Los Angeles (§ 65803), the minimal procedures of section 65804 do.

By its terms, the Zoning Act is intended "to provide only a minimum of limitation in order that counties and cities may exercise the maximum degree of control over local zoning matters." (§ 65800.) It provides that the legislative body of any county or city may adopt zoning ordinances, which establish restrictions on land use.[14] (§ 65850.) When zoning ordinances are adopted or amended, certain procedures must be followed. (§ 65853.)

The minimal procedural requirements all cities (including charter cities like Los Angeles) must follow in section 65804, include the following, "All local city and county

---

**13** Section 65804 provides, in pertinent part: "The following procedures shall govern city and county zoning hearings: [¶] (a) All local city and county zoning agencies shall develop and publish procedural rules for conduct of their hearings so that all interested parties shall have advance knowledge of procedures to be followed. The procedural rules shall incorporate the procedures in Section 65854. [¶] (b) When a matter is contested and a request is made in writing prior to the date of the hearing, all local city and county planning agencies shall insure that a record of all their hearings shall be made and duly preserved, a copy of which shall be available at cost. The city or county may require a deposit from the person making the request. [¶] (c) When a planning staff report exists, the report shall be made public prior to or at the beginning of the hearing and shall be a matter of public record. [¶] (d) When any hearing is held on an application for a change of zone for parcels of at least 10 acres, a staff report with recommendations and the basis for those recommendations shall be included in the record of the hearing."

All future undesignated statutory references are to the Government Code.

**14** Due to the broad scope of section 65850, we consider Prop D, at least in part, a zoning ordinance.

14

zoning agencies shall develop and publish procedural rules for conduct of their hearings so that all interested parties shall have advance knowledge of procedures to be followed. *The procedural rules shall incorporate the procedures in Section 65854.*" (Italics added.) The "procedures in Section 65854," include a planning commission hearing. Appellants argue that such a hearing is required before a zoning ordinance is adopted; the City does not appear to disagree in principle.

The City argues, however, that the Zoning Act requirements apply only to the enactment of ordinances by *local legislative bodies* and not to the enactment of ordinances by *initiative or referendum* (whether in a charter city or general law city). The City is correct. In 1976, the Supreme Court concluded that Zoning Act "notice and hearing provisions govern only ordinances enacted by city council action and do not limit the power of municipal electors, reserved to them by the state Constitution, to enact legislation by initiative." (*Associated Home Builders, Inc. v. Livermore* (1976) 18 Cal.3d 582, 588 (*Associated Home Builders*).) In rejecting previous authority (e.g., *Hurst v. Burlingame* (1929) 207 Cal. 134), the court stated that "the Legislature never intended the notice and hearing requirements of the zoning law to apply to the enactment of zoning initiatives." (*Associated Home Builders*, at p. 594.)[15]

---

[15]    Most cases use the term "initiative" for the situation in which the electors propose an enactment and, if sufficient electors support it, it will be placed on the ballot for a vote. (E.g., Cal. Const., art. II, § 8.) "Referendum" usually refers to the situation where an enactment has been initially passed by the legislative body and, if sufficient electors oppose the enactment, it will be placed on the ballot for a vote. (E.g., Cal. Const., art. II, § 9.) The City Charter provides for an alternative type of referendum, in which the City Council proposes the enactment and decides to submit the proposed law to the electors for a vote. (L.A. Charter, § 460.) Prop D was enacted in this manner. This type of referendum is, in some ways, more like an initiative, in that the proposed enactment is placed on the ballot without having been enacted by the legislative body. There is no difference between either type of referendum or initiative for our purposes. In each method, "it is the vote of the electors at the ballot box that finally determines whether or not a proposed measure shall be a law at all, and it can make no difference in principle whether the proposition originates with electors or with the council." (*In re Pfahler* (1906) 150 Cal. 71, 76.)

15

Appellants try to distinguish *Associated Home Builders* by arguing that the case applies only to matters of strictly municipal concern, whereas the Zoning Act's notice and hearing requirements are themselves matters of statewide concern. Appellants rely on *Committee of Seven Thousand v. Superior Court* (1988) 45 Cal.3d 491, 511 (*Committee of Seven Thousand*) for the proposition that *Associated Home Builders* was limited to matters of municipal, not statewide, concern. Dicta in *Associated Home Builders* had suggested that if the Zoning Act were interpreted to extend to matters enacted by initiative, that conclusion itself would be of doubtful constitutionality, as interfering with the constitutional right of municipal initiative. (*Associated Home Builders, supra,* 18 Cal.3d at pp. 494-595.) *Committee of Seven Thousand* held that this language in *Associated Home Builders* was limited to the context of matters of municipal concern; that is, a state law cannot interfere with the constitutional right of municipal initiative on wholly municipal matters, but can override the power of municipal initiative on statewide matters. (*Committee of Seven Thousand,* at p. 511.) That the power of municipal initiative can be limited by the state in matters of statewide concern is an adjunct of the law of state/local preemption. *Committee of Seven Thousand* made no attempt to limit the holding of *Associated Home Builders* – that the notice and hearing provisions set forth in the Zoning Act did not limit the power of municipal initiative because the Zoning Act had never been intended to apply to local initiatives. (*Committee of Seven Thousand,* at p. 510.) That the Zoning Act, like nearly every other state statute, reflects a matter of statewide concern does not mean that it was intended to apply to initiatives. Putting it another way, the holding of *Associated Home Builders* is that when the Legislature enacted the Zoning Act as a matter of statewide concern, it chose not to apply its procedural protections to municipal initiatives.

In their reply brief, appellants place reliance on language from *Taschner v. City Council* (1973) 31 Cal.App.3d 48, 64 (*Taschner*) stating that presenting one's case to the electorate in the course of an initiative or referendum is no match for presenting one's case to the planning commission. But *Taschner* was expressly disapproved in *Associated Home Builders, supra,* 18 Cal.3d at page 596, footnote 14. The same argument was also

16

rejected in *Arnel Development Co. v. Costa Mesa* (1980) 28 Cal.3d 511, 524, which concluded that landowners' rights are adequately protected. "When zoning is enacted by the city council, landowners by statute are entitled to notice and hearing. [Citation.] When zoning is enacted by initiative, landowners have the same opportunity as their opponents to present their case to the electorate." (*Ibid.*)

We conclude that any failure to follow the Zoning Act notice and hearing requirements for council-enacted ordinances has no effect on the validity of Prop D.[16]

2.      *Recent State Legislation – Medical Marijuana Regulation and Safety Act*

While this appeal was pending, California enacted the Medical Marijuana Regulation and Safety Act (MMRSA), which, among other things, creates a state licensing scheme for medical marijuana. (Bus. & Prof. Code, § 19300 et seq., added by Stats. 2015, ch. 689, § 4.) We sought additional briefing on whether this act had any impact on this appeal. In response, appellants argue that MMRSA demonstrates that regulation of medical marijuana is now a matter of statewide concern, which therefore preempts municipal regulation by initiative without a planning commission hearing. The conclusion does not follow. If regulation of medical marijuana is a matter of statewide concern, Prop D, which regulates medical marijuana solely within the City's borders, is still a municipal initiative on a wholly municipal matter – which was properly enacted without a planning commission hearing.

3.      *Prop D's Enactment Did Not Violate City Charter Section 558*

Pursuant to the Zoning Act, charter cities may develop their own procedures for adopting and amending zoning ordinances. (§ 65803.) The City did so. (See L.A. Charter §§ 550-566.) As part of its responsibilities, the City Planning Commission is required to "make recommendations concerning . . . proposed zoning ordinances in accordance with [Section] 558." (L.A. Charter, § 551.)

---

**16**      The Appellate Division of the Los Angeles County Superior Court recently reached the same conclusion in *People v. Optimal Global Healing, Inc.* (2015) 241 Cal.App.4th Supp. 1.

17

City Charter section 558, subdivision (a) states: "The requirements of this section shall apply to the adoption, amendment or repeal of ordinances, orders or resolutions by the Council concerning" a list of matters, including zoning. Subdivision (b) of that section states "Procedures for the adoption, amendment or repeal of ordinances, orders or resolutions described in subsection (a) shall be prescribed by ordinance, subject to the following limitations:" Appellants direct our attention to subdivision (b)(2), which provides that, after initiation, "the proposed ordinance . . . shall be referred to the . . . Planning Commission for its report and recommendation . . . ." Appellants argue that Prop D is void because it was enacted in violation of Charter section 558, as it was not referred to the Planning Commission.

The flaw in appellants' argument is that Charter section 558, by its plain language, does not apply to ordinances enacted by referendum, such as Prop D. " 'Generally, the same principles of construction applicable to statutes apply to the interpretation of municipal charters. [Citations.] The courts must always look first to the express language of the [law] to ascertain its meaning.' [Citation.]" (*City of San Diego v. Shapiro* (2014) 228 Cal.App.4th 756, 789.) Subdivision (a) of Charter section 558 specifically states that it applies only "to the adoption, amendment or repeal of ordinances, orders or resolutions by the Council." Prop D was not adopted by the City Council.

Appellants claim that referenda must satisfy the requirements of Charter section 558 because of Charter section 460. Charter section 460, entitled "Subject of Referendum" provides, in pertinent part, that "the Council is authorized to submit to a vote of the registered voters of the City, at any election for any purpose at which all the registered voters of the City are entitled to vote, any proposed ordinance, order or resolution, *that the Council itself might adopt*." (Italics added.) They argue that the emphasized language is a procedural limitation on referenda; that is, the Council may only submit a proposed ordinance to the voters when that proposed ordinance had proceeded through all necessary procedures before the Council itself could have adopted it by Council vote alone. We disagree. Section 460 is concerned with the subject matter

18

of referenda; the emphasized language means only that the City Council cannot submit to the voters any proposed ordinance which it is not within the lawful jurisdiction of the Council to enact.

Our conclusion is supported by Charter section 450, entitled "Subject of Initiative." Section 450 is identical to section 460's referendum requirement except it applies to initiatives. It provides, "Any proposed ordinance *which the Council itself might adopt*" may be submitted to the Council by initiative petition. (Italics added.) Were appellants' interpretation of the italicized language correct, it would mean that before an initiative petition could be submitted to the City Council, its proponents would have to satisfy all of the necessary procedural requirements for enactment of an ordinance by the Council – an absurd conclusion, and one at odds with the populist spirit of the initiative process. It is apparent that "which the Council itself might adopt," as used in both Charter sections 450 and 460 is simply a limit on substantive subject matter and not an incorporation of procedural requirements imposed on the Council before the Council may enact an ordinance.

4. *Prop D Does Not Grant the Equivalent of a Conditional Use Permit or Variance*

In their last procedural challenge to the enactment of Prop D, appellants suggest that Prop D, in effect, grants a conditional use permit or variance to those medical marijuana businesses qualifying for exemption without satisfying the procedural or substantive requirements for a conditional use permit or variance.

Conditional use permits and variances differ from each other. (*Essick v. Los Angeles* (1950) 34 Cal.2d 614, 623.) A conditional use permit grants the permittee the right to one of an enumerated list of uses or activities which are allowed *only* by individual permit. (L.A. Mun. Code, § 12.24, subds. U, V & W.) Depending on the use or activity, a different decision maker is authorized to hold a hearing and make an initial decision on whether to grant the permit. (L.A. Mun. Code, § 12.24, subds. C & D.) In contrast, a variance grants an individual exception to the City's zoning ordinances when strict application of the zoning ordinance would result in practical difficulties or

19

unnecessary hardships (among other requirements). (L.A. Charter, § 562, subd. (c).) An application for a variance results in a hearing before the Zoning Administrator. (L.A. Mun. Code, § 12.27, subds. B & C.) The granting of conditional use permits and variances are administrative or quasi-judicial acts. (*Essick,* at p. 623.)

Facially, Prop D does not grant either a conditional use permit or a variance. By definition, it is not a conditional use permit, as medical marijuana businesses are *not* among the itemized uses permitted only by conditional use permit. Nor does Prop D grant a variance; it does not mention any specific parcel of property at all, or make any determinations regarding any specific parcel. On the contrary, Prop D expressly provides that a medical marijuana business is not enumerated as a permitted use, and that the Zoning Administrator "shall not have the authority to determine that the use of any building, structure, location, premises or land as a medical marijuana business may be permitted in any zone; to add medical marijuana business to the Official Use List of the City; or to grant any variance authorizing any medical marijuana business." (L.A. Mun. Code, § 45.19.6.5.)

Appellants argue that Prop D effectively grants conditional use permits or variances because it provides that collectives meeting its requirements "shall not be subject" to misdemeanor prosecution or nuisance abatement proceedings solely on the basis of operating a medical marijuana business that is not a permitted use. (L.A. Mun. Code, § 45.19.6.3.) This is not an affirmative grant of any land use right (permit or variance) but a limited immunity applicable only when certain conditions are met. Whether or not this type of immunity is unconstitutionally unfair (an issue we consider below), the grant of immunity itself was a legislative act, not subject to the administrative requirements of a conditional use permit or variance.[17]

---

[17] Appellants rely on *Trancas Property Owners Assn. v. City of Malibu* (2006) 138 Cal.App.4th 172, 182 and *League of Residential Neighborhood Advocates v. City of Los Angeles* (9th Cir. 2007) 498 F.3d 1052, 1052 for the proposition that the City cannot *by settlement or contract* grant a conditional use permit or variance and bypass the procedural requirements for a conditional use permit or variance. In order to fit the

C.      *Prop D Survives All of Appellants' Substantive Challenges*

We now turn to appellants' substantive challenges to the terms of Prop D.  As discussed above, Prop D bans all medical marijuana businesses, but grants a limited exemption from civil or criminal liability to collectives meeting a list of requirements, including registration pursuant to both the Interim Control Ordinance and the Grandfather/Lottery Ordinance.  None of the appellant collectives met those prior-registration requirements.

We pause to observe that running freely throughout appellants' arguments as to each cause of action is appellants' claim that there is a "right" created by state law to the use, sale and cultivation of medical marijuana.  As we explain:  there is no such right.

1.      *There is No Statutory Right to Medical Marijuana*

It is too late in the day for appellants to argue that the CUA and MMPA grant a statutory right to use and/or collectively cultivate medical marijuana.  Our Supreme Court held in *Riverside* that:  (1) the CUA and MMPA are merely limited exceptions to the sanctions of the state's criminal laws (*Riverside, supra,* 56 Cal.4th at p. 739); (2) exempting certain activities from state prohibitions does not constitute an *authorization* of those activities (*id*. at p. 758); and (3) the CUA and MMPA do not grant a right "of convenient access" to medical marijuana (*id*. at p. 762).  In addition, we have expressly held that neither the CUA nor the MMPA creates "a state right to cultivate, distribute, or otherwise obtain marijuana collectively, and thereafter to possess and use it, for medical purposes."  (*Conejo, supra,* 214 Cal.App.4th at p. 1543.)

Appellants repeatedly assume such a right throughout their brief.  For example, the reply brief states that the CUA "recognizes a 'right' for seriously ill Californians with a

---

square peg of Prop D into the round hole of these cases, appellants must argue that the *immunities* granted by Prop D are conditional use permits or variances and that the voter-approved Prop D was in fact a City contract.  Both premises are untrue.  Prop D is a voter-approved referendum which merely grants immunities from City enforcement, in much the same way the CUA is a voter-approved initiative which grants immunities from certain criminal liabilities.  (See *Riverside, supra,* 56 Cal.4th at p. 739.)

21

medical recommendation to possess and cultivate marijuana pursuant to a medical recommendation. [The MMPA] recognizes that collective cultivation is required to implement the right recognized in [the CUA]." This is an incorrect statement of the law.

Appellants point to the newly-enacted MMRSA as a legislative rejection of the appellate cases that have held no right to medical marijuana exists. Appellants' direct our attention to a section of MMRSA that provides that any *advertisement* for physician recommendations for medical marijuana must include a reference to "the right to obtain and use" medical marijuana.[18]

This language is taken directly from that part of the CUA found in Health and Safety Code section 11362.5, subdivision (b)(1)(A), which states the *purposes* of the CUA include "to ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana . . . ." The Supreme Court has already held that this broad language of *intent* in the CUA does not change the fact that the actual substantive provisions of the CUA create only a limited immunity and not a right. (*Riverside, supra,* 56 Cal.4th at p. 746.) We reject appellants' suggestion that a newly-enacted statute setting forth a *warning* to be included in advertisements somehow constitutes a silent legislative overruling of Supreme Court and Court of Appeal precedent. (Cf. *Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830,

---

[18] Specifically, MMRSA provides that advertisements for physician recommendations for medical marijuana must contain the following notice: "NOTICE TO CONSUMERS: The Compassionate Use Act of 1996 ensures that seriously ill Californians have the right to obtain and use cannabis for medical purposes where medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of medical cannabis. Recommendations must come from an attending physician as defined in Section 11362.7 of the Health and Safety Code. Cannabis is a Schedule I drug according to the federal Controlled Substances Act. Activity related to cannabis use is subject to federal prosecution, regardless of the protections provided by state law." (Bus. & Prof. Code, § 2525.5, added by Stats. 2015, ch. 719, § 5.)

22

838 [statutes are to be harmonized whenever possible; all presumptions are against repeal by implication].)

We dispose quickly of appellants' claim that MMRSA preempts local medical marijuana regulation in general or Prop D in particular. MMRSA expressly addresses both issues. It first states that nothing in its regulatory scheme "shall be interpreted to supersede or limit existing local authority for law enforcement activity, enforcement of local zoning requirements or local ordinances, or enforcement of local permit or licensing requirements." (Bus. & Prof. Code, § 19315, subd. (a), added by Stats 2015, ch. 689, § 4.) It then states that issuance of a state medical marijuana license "shall in no way limit the ability of the City of Los Angeles to prosecute any person or entity for a violation of, or otherwise enforce, Proposition D . . . ." (Bus. & Prof. Code, § 19325, subd. (d), added by Stats. 2015, ch. 689, § 4.) We can imagine no clearer legislative rejection of appellants' argument.

2.      *Cause of Action 1 – Due Process Violation*

Appellants' first cause of action alleges that Prop D denies them procedural due process in that they are deprived of their "right" to collectively cultivate medical marijuana without due process of law. As appellants have no such statutory right, due process is not implicated. (*Conejo, supra,* 214 Cal.App.4th at p. 1562.)

3.      *Cause of Action 2 – Equal Protection Violation*

Appellants' second cause of action alleges that Prop D denies them equal protection because collectives who have previously registered under the Interim Control Ordinance and the Grandfather/Lottery Ordinance (and fulfilled other requirements) are entitled to immunity from prosecution and nuisance abatement proceedings, while collectives that have not registered receive no immunity. Equal protection requires that similarly situated entities receive like treatment under the law. (*Hill, supra,* 192 Cal.App.4th at p. 871.) As inherently suspect classifications or fundamental rights are not at issue, rational relation review applies, and the law will be upheld so long as there is any reasonably conceivable set of facts that provides a rational basis for the

23

distinction.[19]  (*420 Caregivers, supra,* 219 Cal.App.4th at pp. 1333-1334.)  The burden is on the party challenging the statute to demonstrate that the difference in treatment is unrelated to any legitimate government purpose.  (*Id*. at p. 1334.)

We have already concluded in *420 Caregivers* that:  (1) grandfather clauses based on past operation pass constitutional muster; and (2) registration under the Interim Control Ordinance provides a rational basis to further distinguish between collectives as the City could assume previously registered collectives would continue to act in a law-abiding manner.  (*420 Caregivers, supra,* 219 Cal.App.4th at pp. 1337-1338.)  On appeal, appellants point out that we did not consider Prop D in *420 Caregivers*.  This is true, as the issue was not before us.  However, appellants provide no basis for distinguishing our prior holding.  *420 Caregivers* held that grandfathering collectives which had registered under a single prior ordinance did not violate equal protection; grandfathering collectives which had registered under two prior ordinances does not alter the analysis.

Appellants' final equal protection argument is that the Interim Control Ordinance applied by its terms only to medical marijuana *dispensaries*, and appellants are *collectives* who were not required to register.  As we stated in *420 Caregivers*, the "extremely broad definition" of "dispensary" in the Interim Control Ordinance is such that "any collective . . . would or reasonably should have believed itself to be a 'dispensary' subject to the registration requirement. . . ."  (*420 Caregivers, supra,* 219 Cal.App.4th at p. 1340.)  The Interim Control Ordinance defined "dispensary" as "any use, facility or location, including but not limited to a retail store, office building or structure that distributes, transmits, gives, dispenses, facilitates or otherwise provides marijuana in any manner, in accordance with State law, in particular [the CUA and MMPA] inclusive."  As collectives "distribute[], . . ., give[], dispense[], . . . or otherwise

---

[19]     Appellants' suggestion, in their reply brief, that strict scrutiny applies because the right to use medical marijuana is a fundamental right in California is without merit.  As we have discussed, there is no right to use medical marijuana in California.

provide[] marijuana . . . in accordance with [the MMPA]," they fall well within this definition.[20]

4.       *Causes of Action 3 and 4 – Unconstitutional "Special" Law*

Appellants next argue that Prop D is a special law that arbitrarily favors old collectives over new ones, in violation of California Constitution, article IV, section 16, and article I, section 7, subdivision (b).  The former provision provides, "(a) All laws of a general nature have uniform operation.  [¶]  (b) A local or special statute is invalid in any case if a general statute can be made applicable."  The latter provides, "A citizen or class of citizens may not be granted privileges or immunities not granted on the same terms to all citizens."

" 'Under either provision, the mere production of inequality which necessarily results to some degree in every selection of persons for regulation does not place the classification within the constitutional prohibition.  The discrimination or inequality produced, in order to conflict with the constitutional provisions, must be "actually and palpably unreasonable and arbitrary," or the legislative determination as to what is a sufficient distinction to warrant the classification will not be overthrown.  [Citations.]  When a legislative classification is questioned, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of existence of that state of facts, and the burden of showing arbitrary action rests upon the one who assails the classification.' " (*Paul v. Eggman* (1966) 244 Cal.App.2d 461, 469-470.)

---

[20]       Appellants also argue that the definition of "dispensary" in the Interim Control Ordinance is paradoxical, in that it includes those locations that dispense marijuana "in accordance with State law, in particular [the CUA and MMPA] inclusive," but the Interim Control Ordinance simultaneously acknowledged that state law did not (then) specifically address or regulate dispensaries.  Appellants conclude that the Interim Control Ordinance applied only to "[d]ispensaries which are not regulated by state law, but act in accordance with the law that doesn't regulate them."  There is no paradox; dispensaries act in accordance with state law when they dispense *medical* marijuana to qualified patients, rather than generally distributing marijuana for recreational use.

For the same reasons Prop D does not deny appellants equal protection, it does not violate these provisions.[21]

5.  *Cause of Action 5 – Drug House Abatement*

Health and Safety Code section 11570 provides that any place used "for the purpose of unlawfully selling, serving, storing, keeping, manufacturing, or giving away any controlled substance" is a nuisance "which shall be enjoined, abated, and prevented." Appellants allege that Prop D has the same purpose as this section and is therefore preempted by it.  But Health and Safety Code section 11571.1, subdivision (a) provides, "Nothing in this article shall prevent a local governing body from adopting and enforcing laws, consistent with this article, relating to drug abatement.  Where local laws duplicate or supplement this article, this article shall be construed as providing alternative remedies and not preempting the field."

6.  *Cause of Action 6 – Improper Exercise of Local Regulatory Power*

Pursuant to California Constitution, article XI, section 7, "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."  In *Riverside*, the Supreme Court concluded that the CUA and MMPA did not preempt the authority of cities and counties "under their traditional land use and police powers, to allow, restrict, limit, or entirely exclude facilities that distribute medical marijuana. . . ."  (*Riverside*, *supra,* 56 Cal.4th at

---

[21]  For the first time on appeal, appellants argue that Prop D violates yet another constitutional provision dealing with equal treatment under the law:  California Constitution, article XI, section 7.5, which provides that no local measure proposed by the legislative body and submitted to the voters for approval may "[i]nclude or exclude any part of the city . . . from the application or effect of its provisions based upon approval or disapproval of the . . . measure, or based upon the casting of a specified percentage of votes in favor of the measure, by the electors of the city, . . . or any part thereof."  Appellants' strained interpretation of this section – that it prevents Prop D from excluding from its ban some collectives and not others—is not persuasive.  The provision is meant to prevent measures from including or excluding from their application only those areas of the city which voted for or against it.  (Ballot Pamp., Primary Elec. (June 2, 1998) analysis of Prop. 219 prepared by the Legislative Analyst, p. 6.)

26

p. 762.)  Appellants alleged that Prop D does not fall within the holding of *Riverside* because regulation of medical marijuana businesses is not a matter of traditional local zoning or based on a significant local interest.  We reject the argument.  By upholding a complete ban on marijuana dispensaries in *Riverside*, our Supreme Court at least implicitly recognized that regulation of medical marijuana businesses was a matter of traditional local zoning or was based on a significant local interest.

7.    *Cause of Action 7 – Single Subject Rule (dismissed)*[22]

8.    *Cause of Action 8 – Violation of Rights of Privacy and Association*

Appellants next allege Prop D violates their rights of privacy and association by limiting the individual patient appellants' statutory rights to join collectives to only those collectives eligible for immunity under Prop D.  As to privacy, they argue that their constitutionally-protected privacy rights include the right to make medical decisions and rely on their belief that the CUA and MMPA grant them a statutory right to medical marijuana.  As we have held, there is no such statutory right; whatever the scope of the right to make one's medical decisions, it does not include a right to obtain or collectively cultivate marijuana.

Appellants' association argument is based on their desire to associate with other medical marijuana patients in order to influence legislation on the political issue of medical marijuana.  But Prop D has no effect on appellants' ability to associate with anyone to exercise their rights of speech or petition; it simply prevents them from running illegal medical marijuana businesses.  (See *Conejo, supra,* 214 Cal.App.4th at p. 1564.)

9.    *Causes of Action 9, 10, & 12 – Disability Discrimination*

By these causes of action, appellants claim Prop D improperly discriminates on the basis of disability or medical condition.  They rely on three statutes for this assertion: Government Code section 65008, prohibiting local governments from denying land use rights because of any protected characteristic, including disability; Civil Code section 52, prohibiting business establishments from discriminating on the basis of protected

---

[22]    See fn. 8, *ante*.

27

characteristics, including disability and medical condition; and Government Code section 11135, providing that no program or activity administered by, or receiving financial assistance from, the state may discriminate on the basis of, among other bases, disability.

We find nothing in Prop D that discriminates on the basis of disability or medical condition. Prop D lawfully discriminates between registered medical marijuana businesses that were in business as of September 14, 2007 and all other medical marijuana businesses. There is a rational basis for this distinction that is unconnected to disability.

10. *Cause of Action 11 – Improper Threats of Criminal Sanctions for Appellants' Exercise of Rights*

Civil Code section 52.1 prohibits anyone, "whether or not acting under color of law," from interfering or attempting to interfere "by threat, intimidation, or coercion" with the exercise or enjoyment by any individual of rights secured by the Constitution or laws of the United States or California. Appellants alleged that the City violated this section with Prop D, in that Prop D threatens them with criminal sanctions for exercising their statutory rights to use and collectively cultivate medical marijuana. As there is no such statutory right, there are no threats to the exercise of those rights protected under Civil Code section 52.1.

Appellants rely on *County of Butte v. Superior Court* (2009) 175 Cal.App.4th 729, which held that a medical marijuana patient could bring a civil action against a deputy who, under threat of arrest and prosecution, ordered him to destroy marijuana plants he possessed in connection with a small collective he operated out of his home. The court concluded that the patient could conceivably establish a cause of action if he could establish that, taking into account his status as a medical marijuana patient, the deputy did not have probable cause to destroy his property. (*Id*. at pp. 737-738.) As the City points out in its respondent's brief, Appellants' reliance on this case is puzzling, as there are no allegations relating to lack of probable cause to order the destruction of property. Appellants replied that it is not "legally IMPOSSIBLE to allege facts: obviously it is reasonably possible that facts can be alleged." On this basis, appellants argue the trial

court erred in denying leave to amend. As we discussed above, the plaintiff has the burden of showing how the complaint can be amended to state a cause of action. A bare statement that it would be reasonably possible to state relevant facts without identifying the facts to be alleged and connecting them to a valid cause of action does not satisfy this burden.[23]

11. *Cause of Action 13 – Taking Without Just Compensation*

Appellants also sought declaratory relief that Prop D works a taking of their leased property without just compensation. Specifically, appellants argued that their collectives were legal uses of the property that were taken away by Prop D.

If a law effects an unreasonable, oppressive, or unwarranted interference with an existing property use, the ordinance may be invalid as to that property unless just compensation is paid. (*Conejo, supra,* 214 Cal.App.4th at p. 1560.) " 'A legal nonconforming use is one that existed lawfully before a zoning restriction became effective and that is not in conformity with the ordinance when [the use] continues thereafter.' [Citations.] The burden is on the party asserting the right to a nonconforming use to show the *lawful* and continuing use in place at the time the new ordinance is enacted. [Citation.]" (*Id*. at p. 1561, original italics.) The City's municipal code agrees, providing that a building with a nonconforming use "may be maintained provided the . . . use conformed to the requirements of the zone and any other land use regulations at the time it was . . . established." (L.A. Mun. Code, § 12.23.)

The issue, then, is whether appellants can establish their collectives were permitted uses when they were established. Appellants do not clearly identify the ordinance under which they claim to have obtained legal nonconforming use rights. The

---

**23** In connection with a different argument, appellants state that they could amend their complaint to allege "the LAPD confiscates property without compensation based on no fact except [a medical marijuana business] is not on the City Attorney's list of probably compliant collectives." As we hold that Prop D is valid, we fail to see how a bald allegation that the LAPD confiscates property from medical marijuana businesses believed to be in probable violation of Prop D states a cause of action.

29

history of medical marijuana regulation in the City shows generally no legal nonconforming use has ever been created. Medical marijuana collectives are not an itemized permitted use in any zone under the City's zoning plan (L.A. Mun. Code, § 12.00 et seq.); in the absence of a medical marijuana ordinance, they were not a legal use. Thus, prior to the Interim Control Ordinance, no collective was a conforming use. The Interim Control Ordinance halted the establishment of new collectives. No new collectives could legally open. Moreover, it required registration of all existing collectives; without registration, no collective could continue operating. Next, the Grandfather Prior Registrant Ordinance was designed to grandfather *every collective* which had registered under the Interim Control Ordinance – the only possible collectives which could conceivably claim legal nonconforming use rights. When this ordinance was enjoined, the City temporarily amended it by adopting the Grandfather/Lottery Ordinance. This ordinance was designed to ultimately permit only 100 collectives to operate (as chosen by lottery), but it *required* all eligible collectives to register for that lottery. Thus, after the enactment of the Grandfather/Lottery Ordinance, no collective which had not registered for the lottery could possibly claim legal nonconforming use rights. This narrowed the class of potential legal nonconforming collectives to those which had: (1) been established prior to the Interim Control Ordinance; (2) registered under the Interim Control Ordinance; and (3) registered for the lottery under the Grandfather/Lottery Ordinance. This is the precise class of collectives to which Prop D granted limited immunity. Appellants are not within that class.[24]

---

[24] We do not hold that any collective had legal nonconforming use rights prior to the enactment of Prop D. We simply state that any collective which could conceivably claim such rights would have had to be grandfathered under Prop D.

In their reply brief, appellants assert, for the first time, that a May 6, 2010 opinion of a Zoning Administrator concluded that "medical marijuana was determined to be a permitted use in all zones of the City." In a letter brief subsequently filed with the court, the City attached a copy of that "Zoning Administrator's Interpretation." In it, the Zoning Administrator did not state that medical marijuana was an unqualified permitted use in all zones; instead, the Zoning Administrator stated that, based on the City Council's adoption of the Grandfather Prior Registrant Ordinance, medical marijuana

12. *Cause of Action 14 – Waste of Public Funds*

Appellants alleged the City's passage of an August 2013 City Council resolution to instruct the LAPD to work with the federal government to create a citywide enforcement strategy to respond to collectives constituted a waste of public funds. The City's demurrer was sustained on the basis that there is nothing unlawful about cooperating with the federal government. On appeal, appellants do not pursue this argument, but instead argue that money expended on enforcing Prop D is a waste of funds because Prop D itself violates zoning law and the California Constitution. As Prop D is not invalid, this cause of action falls.

13. *Cause of Action 15 – Fifth Amendment Right/Privacy*

Medical marijuana collectives in the City pay a City tax. The City therefore possesses information from collectives regarding their gross receipts and taxes paid. Prop D contains a provision regarding the confidentiality of this information. It provides that the City *shall not* disclose information or documents to the federal government "regarding the gross receipts declared and taxes paid to the City" by any collective entitled to limited immunity under Prop D without "a grand jury subpeona, civil or administrative subpoena, warrant, discovery request, summons, court order or similar process authorized under law which seeks the involuntary disclosure of such information and documents." If the City receives such a request seeking involuntary disclosure to the federal government, "the City shall provide a copy of the [request] to the medical marijuana business whose information and documents are sought." The collective shall have ten days within which to obtain and serve on the City a protective order from a court of competent jurisdiction. (L.A. Muni. Code, § 45.19.6.4.)

---

collectives were a permitted use in any zone, "so long as these Collectives comply with State law, the regulations set forth in [the Grandfather Prior Registrant Ordinance], and all applicable provisions of the Zoning Code." Thus, this letter is not an independent source for the proposition that a collective was a permitted use; the letter simply stated that a collective was a permitted use *if it was in compliance with governing law*.

31

In their complaint, appellants alleged that this provision has the result of violating the individual patients' constitutional rights against self-incrimination by disclosing incriminating documents to the federal government without first obtaining a waiver of the Fifth Amendment privilege. The court sustained the City's demurrer to this cause of action on the basis that there is nothing testimonial in the disclosure of documents regarding the gross receipts declared and taxes paid to the City.

On appeal, appellants do not pursue this theory, but instead seek leave to amend to assert invasion of privacy. They argue that Prop D contemplates the disclosure of "sensitive privileged documents." Although, at one point, appellants suggest the information at issue is "business confidential information," they argue that the documents at risk of being disclosed include "private personal records which may reflect medical conditions, frequency of use of medical marijuana, and may be used to terminate employment . . . ." They argue that Prop D denies "reasonable protection for private records of a qualified patient," and suggest that the procedures to be followed in connection with a subpoena duces tecum for personal records of a consumer (Code Civ. Proc., § 1985.3) should be applied to this setting.

The plain language of Prop D defeats this argument. The document disclosure provision relates *only* to disclosure to the federal government of documents "regarding the gross receipts declared and taxes paid to the City." These are not private patient records. Appellants make no argument demonstrating how the disclosure of gross receipts declared and taxes paid to the City for any collective would violate the privacy rights of any of its individual members.

14. *Cause of Action 16 – Unnecessary Regulation Without Rational Basis/Unfair Stigma*

Appellants' 16th cause of action seeks declaratory relief that Prop D unnecessarily regulates access to medical marijuana without a rational basis or compelling reason. We reject this argument for reasons stated in our discussion of due process and equal protection. (Discussion, sections C.2 and C.3, *ante*.)

32

Appellants seek leave to amend their 16th cause of action to assert that Prop D "stigmatizes" them.  They point to Prop D's statement of intent:

"It is also the purpose of this Article to stem the negative impacts and secondary effects associated with the ongoing medical marijuana businesses in the City, including but not limited to the extraordinary and unsustainable demands that have been placed upon scarce City policing, legal, policy, and administrative resources; neighborhood disruption, increased transient visitors, and intimidation; the exposure of school-age children and other sensitive residents to medical marijuana; drug sales to both minors and adults; fraud in issuing, obtaining or using medical marijuana recommendations; and murders, robberies, burglaries, assaults, drug trafficking and other violent crimes."  (L.A. Muni Code, § 45.19.6.)

Appellants assert that they "deserve an opportunity to clear their names and obtain a judicial declaration that there are no facts to support this name-calling, that it is unjustified."

We see no viable cause of action stated.  The challenged language in Prop D simply states that one of the goals of Prop D is to stem these negative effects of medical marijuana businesses; it does not state that every medical marijuana collective shut down because of noncompliance with Prop D causes these negative effects, and no reasonable person reading it could conclude that it does.  More fundamentally, appellants cite no authority for the proposition that a cause of action exists for individuals or entities who claim that they have been unlawfully stigmatized by an ordinance's language.

15.    *Cause of Action 17 – Attorney's Fees (Remedy Only)*[25]

D.    *Appellants are Not Entitled to Leave to Amend*

The trial court did not abuse is discretion in denying leave to amend.  Before the trial court, appellants argued for leave to amend in order to state new theories; they did not indicate any new facts they could allege if leave to amend were granted.  The same is

---

[25]    See fn. 9, *ante*.

true on appeal as appellants continued to raise even more new theories. We have rejected all of those theories, which are for the most part new facial challenges to Prop D.[26] As for potential new factual allegations, the occasional references appellants make to facts that might be alleged if leave to amend were granted contain no clear statement of those facts, only that there are facts. We see no factual allegations that appellants could make that could state a cause of action.

## DISPOSITION

The judgment is affirmed. The City is to recover its costs on appeal.

RUBIN, J.

WE CONCUR:

BIGELOW, P. J.                                    FLIER, J.

---

[26]     While this case was pending on appeal, the Fifth District Court of Appeal decided *Kirby v. County of Fresno* (2015) 242 Cal.App.4th 940 [195 Cal.Rptr.3d 815]. At appellants' request, we allowed the parties to brief the impact of the *Kirby* decision on this appeal. *Kirby* was concerned with state preemption (by means of the CUA and MMPA) of local regulation of medical marijuana. The *Kirby* court concluded that a very narrow portion of the county ordinance at issue was preempted; specifically, the county's absolute ban on individual cultivation, punishable as a misdemeanor, was preempted by that portion of the MMPA which protects qualified patients with valid medical marijuana identification cards from arrest for possession or cultivation of medical marijuana. (Health & Saf. Code, § 11362.71, subd. (e); *Kirby, supra,* at p. ___ [195 Cal.Rptr.3d 815, 829].) The MMPA's protection of those individuals against arrest prohibits prosecutions under local ordinances for the same conduct. (*Kirby, supra,* at p. ___ [195 Cal.Rptr.3d 815, 829].) *Kirby* confirmed, however, that local ordinances could still prohibit this conduct as a matter of land use. (*Kirby, supra,* at p. ___ [195 Cal.Rptr.3d 815, 832].) To the extent appellants argue that they should be granted leave to amend their complaints to argue that Prop D is preempted under *Kirby*, we disagree. Prop D's criminal penalties apply only to medical marijuana businesses; the MMPA does not provide immunity from arrest or prosecution generally for the collective cultivation of marijuana.

34