Filed 4/22/20 Modified and Certified for Partial Pub. 5/22/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DANIEL BRAUM et al., as Executors, etc., and as Trustees, etc.,<br><br>    Defendants and Appellants. | B289603, B289604<br><br>(Los Angeles County Super. Ct. Nos. BC467194, BC467495) |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, John Shepard Wiley, Jr., Judge. Affirmed.

Stuart M. Miller, for Defendants and Appellants.

Michael N. Feuer, City Attorney of Los Angeles, Arturo A. Martinez, Assistant City Attorney, Meredith A. McKittrick and Andrew K. Wong, Deputy City Attorneys, for Defendant and Respondent.

# I. INTRODUCTION

Michael Braum (Braum)[1] leased two commercial properties in the City of Los Angeles (City) to tenants for use as medical-marijuana dispensaries and then received notice that the dispensaries violated the City's zoning code. The City[2] filed two civil enforcement actions against Braum and the Trust, and the trial court entered judgments against them imposing civil fines in excess of $6 million.

Defendants appeal from the judgments, arguing that: the judgments violated the double jeopardy clause because the City had previously obtained a criminal conviction against Braum based on the same offenses underlying the judgments; the $6 million in civil fines violated the excessive fines clauses of the federal and state constitutions; neither the trial court nor the City had the authority to require Braum to evict the dispensaries; the City's "maze" of medical-marijuana regulations were void for vagueness under the due process clause; and the trial court erred in holding Braum personally liable. We affirm.

---

[1]    Michael Braum filed this appeal individually and in his capacity as the trustee of the Braum Family Living Trust (the Trust). He died while the appeal was pending; and we granted a motion brought by his sons, Daniel Braum and David Hekmat, to be substituted as parties on appeal in their respective capacities as the executors of his estate and successor trustees of the Trust. We will refer to the newly substituted parties as defendants.

[2]    The City brought the actions on behalf and in the name of the People of the State of California.

## II.   REGULATORY AND PROCEDURAL BACKGROUND

A.   *Overview of State and Local Regulation of Medical Marijuana*[3]

### 1.   Compassionate Use Act (CUA) (1996)

In 1996, state voters approved the CUA (Proposition 215; Health & Safety Code § 11362.5), which immunized from prosecution physicians who recommended marijuana to patients for medical purposes.  (*420 Caregivers, supra*, 219 Cal.App.4th at p. 1324.)  The CUA also immunized from prosecution patients and their primary caregivers[4] who cultivated and possessed marijuana that had been physician recommended or approved for patients.  (*Ibid.*)

### 2.   Medical-Marijuana Program Act (MPA) (2003)

In 2003, the MPA was enacted to clarify the scope of the CUA and promote its uniform application.  (*420 Caregivers, supra*, 219 Cal.App.4th at p. 1325.)  It expanded the classes of persons to which immunity from prosecution applied.  (*Ibid.*)

---

[3]   The regulatory background is taken from the decisions in *420 Caregivers, LLC v. City of Los Angeles* (2012) 219 Cal.App.4th 1316 (*420 Caregivers*) and *Safe Life Caregivers v. City of Los Angeles* (2016) 243 Cal.App.4th 1029 (*Safe Life*).

[4]   The CUA applied to prosecutions for violations of Health and Safety Code sections 11357 (possession) and 11358 (cultivation).  (Health & Safety Code § 11362.5, subdivision (d).)

Among other persons, the MPA immunized qualified caregivers and persons with identification cards[5] who cooperatively cultivated marijuana for medical purposes. (*Ibid*.) Pursuant to a subsequent amendment, the MPA also authorized local governments to adopt ordinances to regulate the location, operation, and establishment of medical-marijuana cooperatives and to engage in criminal and civil enforcement of such ordinances. (*Id*. at p. 1326.)

### 3. The Interim Control Ordinance (ICO) (2007)

In August 2007, the City passed the ICO (no. 179,027) in response to concerns about the proliferation of storefront medical-marijuana dispensaries within the City. (*420 Caregivers, supra*, 219 Cal.App.4th at p. 1326.) The ICO prohibited the establishment of medical-marijuana dispensaries within City limits for one year or until a permanent ordinance was enacted. (*Ibid*.) But the ICO exempted from its prohibition dispensaries established before September 14, 2007, as long as those dispensaries operated in accordance with state law and filed certain required documents with the City by November 13, 2007.[6] (*Id*. at p. 1327.) Following the City's exercise of two six-month

---

[5] The MPA created a voluntary program for the issuance of identification cards to "'qualified patients,'" i.e., those persons "'entitled to the protections'" of the CUA. (*420 Caregivers, supra*, 219 Cal.App.4th at p. 1325.)

[6] Approximately 187 "'dispensaries'" registered under the ICO on or before November 13, 2007. (*420 Caregivers, supra*, 219

optional extensions of the ICO's interim one-year prohibition, and then the subsequent enactment of a second interim ordinance (no. 180,749), the ICO's prohibition against the establishment of medical-marijuana dispensaries was to remain in force until March 15, 2010, or until a permanent ordinance was enacted. (*Ibid*.)

4.     The Permanent Ordinance (2010)

In January 2010, the City enacted the Permanent Ordinance (no. 181,069; L.A. Mun. Code, former § 45.19.6 et seq.) which regulated "'medical[-]marijuana collectives'" and required them to submit to a new registration and approval process. (*420 Caregivers, supra*, 219 Cal.App.4th at pp. 1328–1329; *Safe Life, supra*, 243 Cal.App.4th at p. 1035.) The Permanent Ordinance permitted only 70 collectives to operate in the City, but also included a grandfather clause that allowed existing collectives that had properly registered under the ICO to remain in operation. (*Safe Life, supra*, 243 Cal.App.4th at p. 1035.) Because there were "substantially more than 70 collectives in operation that could qualify under the grandfather clause . . . [the Permanent Ordinance] would likely have had the effect of prohibiting all collectives that had not previously registered under the [ICO]." (*Id*. at pp. 1035–1036.)

Cal.App.4th at p. 1327.) Over 30 of those "'dispensaries'" conducted business under names that included the terms 'collective' or 'cooperative.'" (*Ibid*.) As used in this opinion, the terms dispensary, collective, or cooperative will refer to any entity engaged in the cultivation and distribution of medical marijuana.

5

5. The Preliminary Injunction and
the Urgency Measure (2011)

In response to the Permanent Ordinance, certain medical-marijuana collectives filed suit seeking an injunction on the grounds that the ordinance denied equal protection to collectives that had not previously registered under the ICO. (*Safe Life, supra*, 243 Cal.App.4th at p. 1036.) When a trial court issued the requested injunction, the City enacted an Urgency Measure (no. 181,530) which modified the Permanent Ordinance to provide that all collectives that had been in operation prior to September 14, 2007, were eligible to register for a lottery from which 100 collectives would be chosen for inspection and registration. (*Ibid.*)

The City appealed from the injunction against the Permanent Ordinance and, in July 2012, the Court of Appeal issued its opinion in *420 Caregivers, supra*, 243 Cal.App.4th 1036, reversing the injunction and upholding the Permanent Ordinance. (*Safe Life, supra*, 243 Cal.App.4th at pp. 1338–1339.) Due to a grant of review, however, the decision in *420 Caregivers* did not become final until November 2013. (*Safe Life, supra*, 243 Cal.App.4th at pp. 1036–1037.)

6. Proposition D (2013)

The City then passed an ordinance (no. 182,443) calling for a special election for a public vote on Proposition D. (*Safe Life, supra*, 243 Cal.App.4th at p. 1037.) In May 2013, City voters approved Proposition D which enacted a new ordinance (no. 182,580) relating to the regulation of medical marijuana. (*Ibid.*)

6

Proposition D made it "'unlawful to own, establish, operate, use, or permit the establishment or operation of a medical[-]marijuana business[7] . . .' in the City. ([L.A.] Mun. Code, § 45.19.6.2, subd. A.)" (*Ibid*.) Proposition D also included an exception for medical-marijuana businesses that met general requirements, including that the business must have timely registered under both the ICO and the Permanent Ordinance. (*Ibid*.)

B.    *The Leases*

    1.    The Emerald Dispensary Lease (July 2007)

    On June 21, 2005, the Trust took title to the real property located at 13321 Ventura Boulevard, Sherman Oaks. On June 22, 2007, "Braum Real Estate," as lessor, leased that property to two individual lessees. The lease granted the lessees the right to use the premises for the purpose of "SALES OF MEDICAL CANNABIS." Braum executed the lease as "LESSOR." Emerald Triangle Collective, Inc. (Emerald) operated a "medical[-]marijuana dispensary" at the location. The monthly rent for the dispensary was $1,660.

---

7    "Under Prop[osition] D, a 'medical[-]marijuana business' is defined as any 'location where marijuana is cultivated, processed, distributed, and delivered, or given away to a qualified patient . . . or a primary caregiver.'" (*Safe Life, supra*, 243 Cal.App.4th at p. 1037.)

7

### 2. The Ventura Dispensary Lease (January 2009)

On June 21, 2005, the Trust took title to the real property located at 11306 Ventura Boulevard in Studio City.  On January 7, 2009, Braum Real Estate, as lessor, leased that property to a lessee, for the express purpose of operating "MEDICAL[-]MARIJUANA COLLECTIVES."  Braum executed the lease as "LESSOR" in his capacity as "OWNER."  A "medical[-]marijuana dispensary," dba City Organic Remedies, conducted business at that location and was owned and operated by Ventura Herbal Center, Inc. (Ventura).  The monthly rent for the dispensary was $3,000

### C.  *Emerald and Ventura Actions*

### 1. Cease and Desist Letters (2010–2011)

On May 4, 2010, the City sent Braum a letter advising him, among other things, that "[t]he establishment at the above referenced address [the Emerald dispensary was] operating as a medical[-]marijuana provider and did not register with the City Clerk prior to November 13, 2007.  Consequently, the establishment does not, and cannot, comply with the requirements of [the Los Angeles Municipal Code].  Under [s]ection 45.19.6.7, this establishment must therefore immediately cease its operations."  On March 7, 2011, the City sent Braum a second letter with substantially the same advisement and demand.  And, on May 11, 2011, the City sent Braum a similar cease and desist letter regarding the Ventura dispensary.

### 2. Civil Enforcement Complaints (2011)

On August 10, 2011, the City filed two substantially similar civil enforcement complaints against Braum, individually and as trustee of the Trust.[8]  In addition to Braum, the first complaint named as defendants Emerald and four of its individual officers and/or directors (Emerald dispensary defendants).  The second complaint against Braum also named as defendants Ventura and two of its individual officers and/or directors (Ventura dispensary defendants).

As against Braum, each of the complaints alleged two causes of action for:  (1) using a building without a required permit, in violation of Los Angeles Municipal Code section 12.21 A.1(a) (zoning violation),[9] and (2) maintaining a nuisance, namely, a building used for unlawful narcotics activity, in

---

[8]     According to defendants, the two actions against Braum were among 41 such civil enforcement actions brought by the City against medical-marijuana dispensaries, their owners/operators, and landlords.  Those actions were consolidated by the trial court.

[9]     Los Angeles Municipal Code section 12.21 A.1(a) provides:  "No building or structure shall be erected, reconstructed, structurally altered, enlarged, moved, or maintained, nor shall any building, structure, or land be used or designed to be used for any use other than is permitted in the zone in which such building, structure, or land is located and then only after applying for and securing all permits and licenses required by all laws and ordinances."

violation of Health and Safety Code section 11570 et seq. (narcotics abatement).[10]

Other than the respective start dates of the alleged statutory violations, the City alleged identical facts in support of the zoning violation cause of action in each complaint: "Since at least June 1, 2010, [or January 26, 2009,] [d]efendants . . . have been using and maintaining the building or structure at the [p]roperty for a medical[-]marijuana use, a use which is not permitted in that zone and are in violation of [Los Angeles Municipal Code] section 12.21 A.1(a). Violation of section 12.21 A.1(a) constitutes a public nuisance under [Los Angeles Municipal Code] section 11.00 (l).[11] [¶] [] [D]efendant Braum

---

[10] Health and Safety Code section 11570 provides: "Every building or place used for the purpose of unlawfully selling, serving, storing, keeping, manufacturing, or giving away any controlled substance, precursor, or analog specified in this division, and every building or place wherein or upon which those acts take place, is a nuisance which shall be enjoined, abated, and prevented, and for which damages may be recovered, whether it is a public or private nuisance."

[11] Los Angeles Municipal Code section 11.00 (l) provides, in pertinent part: "In addition to any other remedy or penalty provided by this Code, any violation of any provision of this Code is declared to be a public nuisance and may be abated by the City or by the City Attorney on behalf of the people of the State of California as a nuisance by means of a restraining order, injunction or any other order or judgment in law or equity issued by a court of competent jurisdiction. The City or the City Attorney, on behalf of the people of the State of California, may seek injunctive relief to enjoin violations of, or to compel

10

. . . knew that the use of the [p]roperty was in violation of the Los Angeles Municipal Code but nevertheless provide[d] substantial assistance to [the d]ispensary [d]efendants . . . and aided and abetted violations of [Los Angeles Municipal Code] section 12.21 A.1 (a) by renting and/or leasing the [p]roperty to [the d]ispensary [d]efendants . . . for use as a medical[-]marijuana dispensary."

Other than the respective start dates for the alleged statutory violations, the City alleged identical facts in support of the narcotics abatement cause of action in each complaint. "The [p]roperty was, and is, being used, from an exact date unknown but at least since at least [*sic*] June 1, 2010, [or January 26, 2009,] for the purposes of unlawfully selling, serving, storing, keeping, manufacturing or giving away controlled substances and is a building or place wherein or upon which those acts take place. [¶] [Braum] knew or should have known of the nuisance activity at the [p]roperty and did nothing to abate it, allowing the unlawful activity to occur. [¶] . . . [¶] Since on or about June 1, 2010, [or January 26, 2009,] to the present, [Braum has] maintained the [p]roperty which is being used as a medical[-]marijuana dispensary and permitted the operation of a medical[-]marijuana dispensary at the [p]roperty in clear violation of Los Angeles Municipal Code section 12.21 A.1[](a)

---

compliance with, the provisions of this Code or seek any other relief or remedy available at law or equity . . . . [¶] Violations of this Code are deemed continuing violations and each day that a violation continues is deemed to be a new and separate offense and subject to a maximum civil penalty of $2,500 for each and every offense."

11

and permitted the unlawful selling, storing, distributing and giving away of a controlled substance, to wit, marijuana."

The prayers for relief against Braum were identical in each complaint. On the zoning violations, the City sought: to enjoin Braum from using or permitting medical-marijuana use of the properties; to assess a civil penalty in the amount of $2,500 per day pursuant to Los Angeles Municipal Code section 11.00 (l); and to enjoin Braum from violating section 12.21 A.1(a). On the narcotics abatement causes of action, the City sought, among other relief: a declaration that the properties constituted a public nuisance that must be permanently abated; a preliminary and permanent injunction and order of abatement; an order prohibiting Braum from permitting or sanctioning the operation of any type of "marijuana[-]related venture" on the properties; an order closing the properties for use for any purpose under the control of the trial court or, in the alternative, ordering Braum to pay the City the fair market rental value of the properties for one year; an order assessing Braum a $25,000 civil penalty; and an order requiring Braum to "file an unlawful detainer action to evict [the tenants of the properties] and diligently pursue the . . . action until [he had] retaken possession of the [properties]."

### 3. Preliminary Injunction: Emerald Dispensary (2012)

On November 14, 2012, the trial court held a hearing on the City's motion for preliminary injunction against, among others, Braum as owner of the property upon which the Emerald dispensary was located. Following the hearing, the court granted the motion and issued an injunction against Braum as to the

12

Emerald dispensary only.[12]  Braum was ordered:  (1) not to "allow the use of the [p]roperty for a medical[-]marijuana" purpose; (2) not to "lease or otherwise allow anyone to use the [p]roperty for a medical[-]marijuana" purpose; and (3) not to allow "any signage on the [p]roperty to remain which advertises a medical[-]marijuana dispensary."

### 4.  Order to Show Cause:  Emerald Dispensary (2013)

On August 20, 2013, the City applied for an order to show cause (OSC) regarding contempt against Braum and others. According to the City, Braum had failed to comply with the preliminary injunction.  On that same date, following a hearing on the application, the trial court issued an OSC, which required Braum to appear on September 25, 2013, and show cause why he should not be ordered to, among other things, evict the "current medical[-]marijuana dispensary" from his property.  On March 14, 2014, the parties entered into a settlement, in which Braum agreed to pay the City $10,000 in exchange for the OSC being taken off calendar.  The court therefore did not issue an order requiring an eviction.

### 5.  Criminal Complaint

On November 12, 2013, the City filed a misdemeanor complaint against Braum and others, including Downtown

---

[12]    The preliminary injunction concerning the Ventura property did not contain any provisions directed at Braum individually or in his capacity as trustee of the Trust.

13

Discount Center, Inc. and 1123 West 7th Street, LLC.[13]  The complaint charged Braum with six counts of violating Los Angeles Municipal Code section 45.19.6.2A[14] and six counts of violating section 12.21 A.1(a).  The crimes allegedly occurred on specific dates between and including August 23, 2013 and October 11, 2013.[15]  On January 7, 2014, Braum pleaded no contest to each count, the trial court placed him on a "formal diversion for a period of 12 months,"[16] and ordered him to pay

[13]    According to filings with the Secretary of State, Braum was the sole member and/or manager of 1123 West 7th Street, LLC from November 2008 through November 2016.

[14]    As of May 2013, following the passage of Proposition D, section 45.19.6.2 provided:  "**SEC. 45.19.6.2.  PROHIBITED ACTIVITIES.**  [¶]  A. It is unlawful to own, establish, operate, use, or permit the establishment or operation of a medical[-]marijuana business, or to participate as an employee, contractor, agent or volunteer, or in any other manner or capacity in any medical[-]marijuana business.  [¶]  B. The prohibition in Subsection A, above, includes renting, leasing, or otherwise permitting a medical[-]marijuana business to occupy or use a location . . . ."

[15]    Defendants contend that "Count I was a generic accusation regarding medical marijuana dispensaries applicable to every possible location within the City as well as every possible activity and time."  Defendants then quote from a portion of that count.  The entirety of the count, however, makes clear that the violation was alleged to have occurred on August 23, 2013.

[16]    "[D]iversion is generally understood to mean 'the suspension of criminal proceedings for a prescribed period of time

14

$500 and not to rent to a "marijuana business."  The court continued the matter to January 7, 2015, for "disposition and resetting."  We have no further record of the proceedings in the criminal matter.

6.  City's Summary Judgment Motion (2014)

On or about March 10, 2014, the City filed its motion for summary judgment, or, in the alternative, summary adjudication, against, among others, Braum based on his and/or the Trust's ownership of the two properties upon which the Emerald and Ventura dispensaries were located.  The City argued that there was no triable issue of fact as to the zoning violation because Braum engaged in, permitted, or allowed or aided the sale or distribution of marijuana at the properties, and such activity was an unpermitted use in violation of Los Angeles Municipal Code, section 12.21 A.1(a).  The City also argued that Braum assisted and participated in "the illegal marijuana use onsite" by "'handing over the keys to the dispensaries,'"—i.e., providing them a place of business—and cashing the lease checks.  According to the City, Braum was "'on actual and inquiry notice when leasing to a business having to do with marijuana."

Regarding the narcotics abatement claim, the City argued that there was no triable issue of fact as to whether Braum engaged in, permitted, allowed, or aided the sale or distribution of marijuana at the properties and such conduct constituted an unlawful use in violation of the narcotics abatement law.  The

with certain conditions.'" (*People v. Craine* (2019) 35 Cal.App.5th 744, 751.)

15

City maintained that any purported lack of knowledge of the statutory nuisance was irrelevant to the imposition of liability under Health and Safety Code section 11570.

The City supported its requests for summary adjudication against Braum with, among other evidence, documents showing the dispensaries' occupation of the Sherman Oaks and Studio City properties, documents showing the Trust's ownership of those properties, and declarations of police officers establishing sales of marijuana at the Emerald and Ventura dispensaries.

Braum opposed the motion, arguing that as of May 2010, the medical-marijuana dispensaries were legal based on the City's zoning administrator's interpretation;[17] the statutes relied upon by the City to show liability were ambiguous; the City failed to show that he aided and abetted the conduct of the dispensaries; the action was moot because both dispensaries had vacated the properties; the civil enforcement actions violated Braum's double jeopardy rights because he had been criminally convicted for the same offense; and Braum was immune from liability under Health and Safety Code section 11362.775.

Braum supported his opposition with his declaration that he believed the two leases were for businesses that filled prescriptions for medical marijuana and, as such, were considered pharmacies, i.e., permitted uses of his commercial

---

[17]    On May 6, 2010, the City issued a zoning administrator's interpretation concerning medical-marijuana collectives.  The interpretation concluded that "[m]edical[-m]arijuana [c]ollectives are permitted in any zone, subject to all applicable provisions of State law, the Zoning Code and [the Permanent Ordinance n]o. 181,069 [Los Angeles Municipal Code former section 45.19.6 et seq.]."

16

properties; lawyers he consulted advised him that he "was acting within the law" by leasing to the dispensaries; he allowed the dispensaries to use his properties in reliance on the City's May 2010 zoning administrator's interpretation that medical marijuana was a permitted use; the Ventura dispensary closed in January 2013, and once the decision in *420 Caregivers, supra*, 219 Cal.App.4th 1316 became final, he began taking steps to evict the Emerald dispensary which closed in September 2013.

In its reply, the City argued that Braum's understanding that the dispensaries were pharmacies, and therefore permitted uses, was unreasonable and irrelevant; the dispensaries violated the City's zoning code because they were not expressly permitted uses; the law regarding permitted uses and marijuana dispensaries was not ambiguous or unclear; Braum's reliance on the advice of counsel did not immunize him from the zoning and nuisance violations; the civil enforcement actions were not moot; double jeopardy did not apply because the criminal conviction upon which that defense was based involved a different property; and the undisputed evidence showed that Braum, as landlord, assisted and participated in the businesses of his dispensary tenants.

7. <u>Hearing and Rulings on Motion (2015)</u>

On October 29, 2015, the trial court held a further hearing[18] on the City's motion for summary judgment. Following

---

[18]   Following an initial hearing on May 29, 2014, the trial court denied the City's motion for summary adjudication on the grounds that the City had failed to demonstrate that there were

argument, the trial court took the matter under submission and, on December 1, 2015, the court issued a written order granting the City's motion against Braum in the two actions against him, as well as against others in the consolidated actions.

8. Hearing and Rulings on Remedies Phase (2018)

On January 10, 2018, the City submitted "remedies briefs" for the Emerald and Ventura actions. According to the City, Braum was liable for the maximum penalty of $2,500 per day under Los Angeles Municipal Code section 11.00 (l) for the zoning violations at the Emerald property for the period from June 1, 2010, through at least November 14, 2012, for a total of 897 days. And, for the zoning violations at the Ventura property, the City maintained that Braum was liable for the maximum civil penalty of $2,500 per day under section 11.00 (l) for the period from January 26, 2009, through at least February 4, 2013, for a total of 1,470 days. In addition, the City argued that Braum was liable for the maximum penalty of $25,000 for each property under Health and Safety Code section 11581, subdivision (b)(2) based on the nuisance violations established under section 11570.

---

no triable issues of fact on the issues of entitlement to and amount of civil penalties, which the court concluded were essential elements of the City's two claims. In March 2015, however, that ruling was vacated by the decision of *People ex rel Feuer v. Superior Court (Cahuenga's the Spot)* (2015) 234 Cal.App.4th 1360, 1364, which held that although civil penalties were available remedies, they were not elements of the City's causes of action.

In support of its request for penalties, the City submitted, among others, documents filed with the Secretary of State regarding Braum's membership in the limited liability company, 1123 West 7th Street LLC. Among other declarations, the City submitted a declaration from a Deputy City Attorney describing the cease and desist letters sent to Braum regarding the Emerald and Ventura dispensaries. The City also submitted a declaration from a City paralegal who researched Braum's real property holdings and concluded that Braum was the trustee of two trusts that together held title to 13 properties in Los Angeles County. The paralegal also concluded that Braum was an officer or managing member of various entities that owned two multi-unit apartment or condominium complexes and approximately 11 other properties in Los Angeles County. In addition, the paralegal discovered that Braum was a manager of another LLC that owned nine properties. And, a City investigator determined that the Emerald dispensary was located an impermissible 35 feet from a grade school.

In opposition to the civil penalties claimed against him, Braum argued: He could not be held individually liable for the alleged zoning violations because only the owner of the property, i.e., the Trust, could be liable, and the summary judgment orders entered were only against Braum as an individual; there was no zoning ordinance in effect between September 2007 through August 2012 that prevented a landlord from renting to a medical-marijuana dispensary and therefore the penalties for the zoning violation at the Emerald and Ventura properties should only be imposed from August 2012 to the dates when the dispensaries stopped operating; because the settlements with the other defendants ranged from $1,500 to $150,000, the penalties

imposed in the two cases should not exceed $150,000; current law, Proposition 64, allowed for the sale of both medical and recreational marijuana.

Braum supported his opposition with his declaration explaining that the Trust, as landlord, did not intend to violate any laws and was advised by former counsel that the dispensaries could lawfully occupy the properties; both dispensaries had ceased to operate, one in 2012 and the other in 2013; and the trial court should demonstrate leniency and award penalties that were in line with the penalties imposed in other cases. Braum, however, did not submit any evidence showing his inability to pay the proposed penalties.

In reply, the City argued that Braum was attempting to relitigate liability issues already decided against him on summary judgment; substantial penalties were warranted for the entire time periods specified; the penalties should reflect the egregious facts of Braum's conduct in response to both the cease and desist letters and the civil enforcement actions against him; and a permanent injunction was warranted.

On February 22, 2018, the trial court conducted the remedies phase hearing. Following argument, the court ruled in favor of the City and indicated that it would sign the City's proposed judgments as submitted. The court rejected Braum's argument that he should be assessed penalties that were similar to the penalties paid by a different landlord who had settled its case, noting that a penalty that was the result of a negotiated compromise involved an "entirely different situation" from the case at issue. The court stated that the penalties sought by the City were appropriate, and adopted the reasoning argued by the City. It also observed that a hefty penalty was appropriate

20

because of what it characterized as Braum's "flagrant" disobedience of the law. In the court's view, it was "quite obvious that there was a bet that the political current, the policy climate would change in the future. And if we just ride this thing out and defy it long enough we'll end up, as that expression says, 'better to ask for forgiveness than permission.' [¶] Well, I don't think that is a good way to run a city where citizens believe [they can do] what is profit maximizing although illegal and later [they can] ask for forgiveness."

9. Judgments (2018)

On February 22, 2018, the trial court entered substantially similar judgments against Braum in the Emerald and Ventura actions. The findings in support of each judgment provided that Braum had conducted and maintained a nuisance on the properties in violation of Los Angeles Municipal Code section 12.21 A.1(a) and Health and Safety Code section 11570. The judgment and order of abatement provided that it was "binding on . . . Braum, individually and in his capacity as [t]rustee of [the Trust] . . . ." Based on the finding that each property maintained a public nuisance, the court ordered abatement. In addition to issuing injunctions against Braum preventing the use of the properties for any medical-marijuana related use, the judgments each imposed for the nuisance violation a $25,000 penalty pursuant to Health and Safety Code section 11581, subdivision (b)(2). The judgment in the Emerald action also imposed for the zoning violation a civil penalty of $2,242,500 pursuant to Los Angeles Municipal Code section 11.00 (l); and the judgment in the Ventura action imposed a penalty of $3,675,000 for the zoning

21

violation in that case. The judgments in both actions further imposed against Braum awards of investigative costs, attorney fees, and court costs that are not at issue in this appeal.

## III. DISCUSSION

### A. *Double Jeopardy*

#### 1. <u>Background</u>

As explained, after the two civil enforcement actions were filed, but while they were still pending, the City filed a criminal misdemeanor complaint against Braum, his limited liability company, a corporation, and two other individuals. The complaint charged six counts based on alleged violations of Los Angeles Municipal Code section 45.19.6.2.A and six counts based on alleged violations of section 12.21 A.1(a). The allegations of each count, however, were boilerplate in nature and did not provide any specific facts about the alleged offenses, other than the specific dates upon which they occurred.

Defendants contend that the entry of the judgments in the two civil actions, after Braum had been convicted in the criminal proceeding, violated the federal and state double jeopardy clauses. According to defendants, the general allegations of misconduct asserted in the criminal complaint described conduct substantially similar to the conduct upon which liability was subsequently imposed in the two civil actions following summary judgment. They therefore conclude that the same offenses were at issue in both the criminal and civil actions.

22

2.	Legal Principles

"The Fifth Amendment to the United States Constitution provides that '[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . .' This guarantee is applicable to the states through the Fourteenth Amendment. [Citations.] Similarly, article I, section 15, of the California Constitution provides: 'Persons may not twice be put in jeopardy for the same offense . . . .'" (*People v. Saunders* (1993) 5 Cal.4th 580, 592–593.) "Although in some contexts article I, section 15, of the California Constitution may provide a level of protection higher than that afforded by its federal counterpart" (*id.* at p. 596), neither party suggests that, in this case, the California double jeopardy clause should be interpreted differently than the federal clause.

The Double Jeopardy Clause "protects against a *second prosecution* for the *same offense* after conviction." (*People v. Sloan* (2007) 42 Cal.4th 110, 120–121, italics added.) The defendant bears the burden of demonstrating that double jeopardy applies. (*People v. Newell* (1923) 192 Cal. 659, 667; *People v. Mason* (1962) 200 Cal.App.2d 282, 285.)[19]

---

[19]	In certain "unique circumstances," such as "when the prosecution's charging decisions and the charges themselves necessitate," the burden shifts to the prosecution "once defendant makes a nonfrivolous showing that an indictment or information charges him with an offense for which he was formerly placed in jeopardy;" for instance, "when a defendant is being retried on a conspiracy charge for which defendant maintains he has been convicted or acquitted." (*People v. Smith* (2005) 132 Cal.App.4th 1537, 1549, fn. omitted.) Defendant does not contend that the

23

"The [Double Jeopardy] Clause protects only against the imposition of multiple *criminal* punishments for the same offense, [citations], and then only when such occurs in successive proceedings . . . . [¶] Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction" and depends on: (1) "whether the legislature '. . . indicated, either expressly or impliedly a preference for one label or the other'" and (2) "'whether the statutory scheme was so punitive either in purpose or effect,' [citation], as to 'transform what was clearly intended as a civil remedy into a criminal penalty.'" (*Hudson v. United States* (1997) 522 U.S. 93, 99.)

3. Analysis

Defendant contends in his opening brief that he "pled *nolo contendere* and was convicted on all charges." But, as we discuss above, the record on appeal does not indicate whether defendant was sentenced on January 15, 2015, or whether, at the conclusion of a 12-month period of diversion, the charges were dismissed. (See, e.g., Penal Code, § 1001.7.) We will assume for purposes of this opinion that Braum could establish that jeopardy attached when he entered his no contest plea to the criminal complaint, even though he was not sentenced in that case. (But see *Liang v. Superior Court* (2002) 100 Cal.App.4th 1047, 1055 [jeopardy did not attach when a defendant entered a plea of no contest as part of a conditional offer that required his codefendants to also plead

circumstances of this case relieved him of the burden or otherwise warranted shifting it to the City.

guilty and court then vacated no contest plea, over the defendant's objection, prior to sentencing].)

We will further assume that defendants could demonstrate that the penalties imposed in the civil complaints at issue constituted criminal, rather than civil, penalties. Even giving defendants the benefit of these assumptions, we reject their double jeopardy claim because they still have not met their burden of demonstrating that the conduct at issue in the criminal complaint constituted the "same offense" as the conduct at issue in the civil complaints.

According to the criminal complaint submitted by Braum in opposition to the summary judgment motion, the offenses in that action occurred on specific dates between August 23, 2013, and October 11, 2013. The complaint in the Emerald action alleged that the conduct forming the basis for the zoning- and nuisance-based claims against Braum began in June 2010; and the complaint in the Ventura action alleged that the conduct underling the zoning and nuisance claims asserted in that action began in January 2009. The City argued that Braum's liability for the Emerald dispensary ended on November 14, 2012, and his liability for the Ventura dispensary ended on February 4, 2013. Thus, the only documents on this issue submitted by Braum in opposition to summary judgment, which were the criminal complaint and minute order, demonstrated that there was no overlap in the dates at issue in the criminal complaint and the civil complaints.

Nor did Braum submit any evidence that the conduct at issue in the criminal complaint occurred at the same location as the conduct at issue in the civil complaints. Although all three complaints charged that the conduct occurred in Los Angeles, it

25

appears from the caption of the criminal complaint that the charged offenses involved a dispensary—Downtown Discount Center, Inc.—and a property—1123 West 7th Street—that are not mentioned in either the civil complaints or the evidence in support of the summary judgment motion.

The allegations and evidence before the trial court were therefore insufficient to show that the criminal complaint was based on the same offenses as the civil actions.  (See, e.g., *Blockburger v. United States* (1932) 284 U.S. 299, 301 [two narcotics sales, "although made to the same person, were distinct and separate sales made at different times"]; *People v. Cuevas* (1996) 51 Cal.App.4th 620, 624 [no bar to successive prosecutions where "offenses committed *at different times and at different places*"].)

B.    *Excessive Fines*

1.    Background

Defendants contend the penalties imposed, which totaled $5,967,500, were unconstitutionally excessive under the Eighth Amendment because:  the penalties were grossly disproportionate to the offenses; the trial court failed to properly consider the four factors mandated by *United States v. Bajakajian* (1998) 524 U.S. 321 (*Bajakajian*); and the imposition of daily penalties is suspect and disfavored.

26

2. <u>Legal Principles</u>

"The Eighth Amendment to the United States Constitution states:  'Excessive bail shall not be required, *nor excessive fines imposed*, nor cruel and unusual punishments inflicted.'  (Italics added.)  '[T]he Due Process Clause of the Fourteenth Amendment to the Federal Constitution . . . makes the Eighth Amendment's prohibition against excessive fines and cruel and unusual punishments applicable to the States.  [Citation.]  The Due Process Clause of its own force also prohibits the States from imposing "grossly excessive" punishments . . . .'  [Citation.]  [¶] The California Constitution contains similar protections.  Article I, section 17, prohibits 'cruel or unusual punishment' and 'excessive fines;' article I, section 7, prohibits the taking of property 'without due process of law.'"  (*People ex rel Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 727–728 (*R.J. Reynolds*).)

"The leading United States Supreme Court case on the Eighth Amendment's prohibition of excessive fines is [*Bajakajian, supra*,] 524 U.S. 321 . . . , which involved a federal statute (31 U.S.C. § 5316(a)) requiring any person transporting more than $10,000 out of the United States to file a report with the United States Customs Service.  Bajakajian attempted to take $357,144 out of the country without filing a report.  The government claimed that the entire $357,144 was forfeited.  [¶] The high court pointed out that '[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality.'  (*Bajakajian, supra*, 524 U.S. at p. 334.)  It then set out four considerations:  (1) the defendant's culpability; (2) the relationship between the harm and the

27

penalty; (3) the penalties imposed in similar statutes; and (4) the defendant's ability to pay.  (*Id.* at pp. 337–338; see *City and County of San Francisco v. Sainez* (2000) 77 Cal.App.4th 1302, 1320–1322 . . . (*Sainez*).)  After reviewing those considerations, the high court held that the forfeiture of Bajakajian's currency constituted an 'excessive fine' barred by the Eighth Amendment."  (*R.J. Reynolds, supra*, 37 Cal.4th at p. 728.)

3.    Analysis

"[O]ur review of the ruling on the constitutional question [under the Eighth Amendment's excessive fines clause] is independent judgment, or de novo (*Townsel v. San Diego Metropolitan Transit Development Bd.* (1998) 65 Cal.App.4th 940, 946 . . .), but with deference to underlying factual findings, which we review for substantial evidence, viewing the record in the light most favorable to the ruling (*Ojavan Investors, Inc. v. California Coastal Com.* (1997) 54 Cal.App.4th 373, 395 . . . ; cf. *People v. Dillon* (1983) 34 Cal.3d 441, 455–456, 477–478 . . . [cruel or unusual punishment])."  (*Sainez, supra*, 77 Cal.App.4th at p. 1313.)  Contrary to defendants' assertion, when applied to the facts in this case, the four-part *Bajakajian* test shows that the imposition of the civil fines did not violate the excessive fines clause.

a.    Braum's Culpability

During the remedies phase, the City produced evidence that Braum was notified prior to the filing of the two civil actions—in May 2010 and again in March and May 2011—that

28

the Emerald and Ventura dispensaries operating on his properties were not permitted under Los Angeles Municipal Code section 45.19.6.7 and that they must cease operations. Braum took no action in response to the notice and instead continued to lease the two properties to his dispensary tenants. The City then filed civil actions against Braum in August 2011 to compel compliance with its zoning code and the nuisance abatement law, but the dispensaries continued to operate under the Trust's leases. Over a year after filing the actions against Braum, the City sought and obtained in November 2012 a preliminary injunction in the Emerald action which ordered him not to allow the Sherman Oaks property to be used as a marijuana dispensary. Notwithstanding the preliminary injunction, the Emerald dispensary continued to operate. As a result, in August 2013, the City sought and obtained an OSC regarding contempt against Braum which he ultimately settled in March 2014.

In addition, during the remedies phase, the City submitted evidence of a citizen complaint that the Emerald dispensary was also being used as a "grow." According to the complainant, "there was a smell of marijuana being emitted" from the property, and the complainant observed "large grow lights and other such improvements." But when the complainant raised the issue with Braum, he denied the existence of the grow or the smell of marijuana at his property. The City also submitted evidence that the Emerald dispensary was impermissibly operating within 35 feet of an elementary school, notwithstanding the requirement in Los Angeles Municipal Code section 45.19.6.3 A.2(a) that marijuana dispensaries were not permitted within "a 1,000-foot radius of a school . . . ."

Based on the evidence presented to it, the trial court concluded that Braum's disobedience of the City's ordinances and the court's orders was "flagrant."[20]  That conclusion was amply supported by the record on the remedies hearing which clearly demonstrates Braum's culpability for the continuing offenses on his two properties.

> b.     Relationship Between the Harm and
>         the Penalty

The City had a valid and strong interest in regulating uses within the City, including medical-marijuana uses, and in abating nuisances defined by state law to address the perceived harms underlying its zoning regulations and the statewide nuisance abatement law.  (*Sainez, supra*, 77 Cal.App.4th at p. 1315 [securing obedience to code requirements through penalties is a legitimate exercise of the police power].)  By

_____

[20]     Defendants maintain that the trial court ignored the evidence of Braum's "good faith," including his testimony that he relied on the advice of counsel and had no intention of violating the medical-marijuana laws, which laws he characterized as ambiguous, at best.  But the record reflects that the court was well aware of the long procedural history of the actions against Braum and his responses to them.  It was therefore within the purview of the court, sitting as the trier of fact during the remedies phase, to determine the weight, if any, to be given to Braum's evidence in opposition to the remedies sought against him by the City.  There is nothing in the record to suggest that the court failed to engage in such a weighing process before deciding to give more weight to the ample evidence submitted by the City in support of those remedies.

consistently resisting the City's enforcement efforts and instead allowing the unpermitted uses and nuisances to continue on his Trust's properties, Braum increased the risk of the harm the City was endeavoring to enjoin and abate. Because, as the landlord, it was within his power to comply in a timely manner with the City's enforcement efforts, and thereby mitigate the amount of the penalties imposed, his own conduct dictated that the amount of penalties necessary to achieve the City's legitimate enforcement goals would be substantial. (See *Sainez, supra*, 77 Cal.App.4th at p. 1316 [defendants had it within their control first to prevent and then to stop the accumulation of penalties; thus, they "had their own intransigence to blame" for the amount of the penalties].)

### c. Penalties Imposed in Similar Statutes

As the City points out, there are no published cases showing the amounts of penalties imposed on landlords of medical-marijuana dispensaries. But the cases cited by the City are sufficiently analogous to show that the penalties imposed in this case are not dissimilar to those imposed under other regulatory statutes. (See, e.g., *People v. Overstock.Com, Inc.* (2017) 12 Cal.App.5th 1064, 1087–1088 [trial court imposed a daily penalty of $2,000 for a total of $6,828,000 in civil penalties under Business and Professions Code sections 17206, subdivision (b) for unfair competition and 17536, subdivision (b) for false advertising] and cases cited therein at pp. 1089–1090.)

31

d.     Ability to Pay

Defendants argue that the City did not produce any evidence of Braum's ability to pay the amount of civil penalties sought.  The City counters that it was Braum's burden in the trial court to raise and demonstrate his inability to pay the penalties, citing, among other cases, *People v. First Federal Credit Corp.* (2002) 104 Cal.App.4th 721, 729.)

To the extent it was Braum's burden to show an inability to pay the penalties, he failed to carry that burden because his opposition did not raise the issue, much less submit evidence concerning his financial status.  But, even it was the City's burden to make a prima facie showing of Braum's ability to pay, its evidence in support of its remedies briefs, showing that Braum controlled a substantial amount of commercial and residential real estate in Los Angeles County, satisfied that burden.  Based on the evidence submitted, the trial court could have reasonably inferred that Braum had the financial ability to pay the penalties.

C.     *Order to Evict*

Defendants claim that the trial court's liability findings against Braum for the alleged zoning and statutory nuisance violations were all driven by his conduct in failing to file and diligently pursue unlawful detainer actions against the Emerald and Ventura dispensaries.  According to defendants, because neither the City nor the court had authority to order Braum to evict his tenants, he could not be held liable for failing to so in

response to the filing of the civil actions, the entry of the preliminary injunction, or the issuance of the OSC.

As an initial matter, Braum did not oppose the summary judgment motion on the grounds that neither the City nor the trial court had the authority to order him to file and diligently pursue an unlawful detainer action. His failure to raise the issue in the first instance with the trial court therefore forfeited the issue on appeal. (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264–265.)

Even assuming Braum had preserved the issue for appeal, defendants' argument is based upon a faulty premise. The trial court's liability findings against Braum were made on summary judgment and, contrary to Braum's assertion, the allegations and evidence upon which the court's liability determinations were made did not include any mention of his failure to file unlawful detainer actions in response to the City's demands or court orders. Although the preliminary injunction and OSC issued against him were based, in part, on evidence that he had failed to take any action to prevent the unpermitted uses and nuisances on his Trust's properties, none of that evidence was before the court at the summary judgment hearing.

Instead, as explained, the City limited its evidentiary presentation to documentary evidence showing the dispensaries' occupation of the Sherman Oaks and Studio City properties and the Trust's ownership of those two properties, as well as police officer declarations showing that marijuana was being dispensed there. Because the trial court's rulings against Braum on the summary judgment motions were not based in any way on evidence that Braum failed to file and pursue unlawful detainer actions, his arguments and authorities concerning the court's

33

authority to order him to file and pursue such actions are irrelevant.

Moreover, even assuming the trial court's liability findings were based, in part, on Braum's failure to comply with the preliminary injunction against him, the injunction ordered him not to allow the Trust's properties to be used for medical-marijuana purposes or to lease the properties for such purposes. The injunction did not require that Braum file unlawful detainer actions or pursue them diligently under court supervision. And, although the OSC ordered Braum to appear and explain why the court should not order him to file unlawful detainer actions, no such order was ever entered against Braum because the OSC was settled. As Braum was never ordered to file an unlawful detainer action, the trial court could not find Braum liable for failing to pursue such actions against the dispensaries. Finally, although the complaint sought, in its prayer for relief, an order requiring Braum to file unlawful detainer actions, the judgment did not include any such order.

D.    *Due Process*: *Vagueness*

1.    Background

According to defendants, at the time Braum executed the leases for the Emerald and Ventura dispensaries—June 21, 2007, and January 7, 2009, respectively—the City's medical-marijuana regulations were so complex, and their meaning so arcane, that "it was virtually impossible for any landlord to determine and prove whether a given dispensary was operating legally, and

34

Braum therefore had no clearly lawful path to follow." We are unpersuaded by defendants' argument.

    2.    <u>Legal Principles</u>

"'The vagueness doctrine bars enforcement of "'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'"'" (*People v. Navarro* (2016) 244 Cal.App.4th 1294, 1300.) We review vagueness challenges de novo. (*Id.* at p. 1301.)

"'The starting point of our analysis is "the strong presumption that legislative enactments 'must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears. [Citations.] A statute should be sufficiently certain so that a person may know what is prohibited thereby and what may be done without violating its provisions, but it cannot be held void for uncertainty if any reasonable and practical construction can be given to its language.'" [Citation.]' (*Williams v. Garcetti* [(1993)] 5 Cal.4th [561,] 568.)" (*People v. Mary H.* (2016) 5 Cal.App.5th 246, 260.)

"The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry,

35

or by resort to an administrative process.  The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." (*Village of Hoffman Est. v. Flipside, Hoffman Est.* (1982) 455 U.S. 489, 498–499.)

### 3. Analysis

We thus begin our analysis under the strong presumption that the City's medical-marijuana regulations must be upheld unless defendants affirmatively demonstrate that those regulations are clearly unconstitutional.

The zoning ordinances here were neither vague nor uncertain.  The ICO, which became effective on September 14, 2007 (*420 Caregivers, supra*, 219 Cal.App.4th at p. 1326 and fn. 2), plainly prohibited the establishment or operation of medical-marijuana dispensaries within the City limits.[21]  Although the ICO also allowed an exception to this general prohibition, the requirements of that exception were

---

[21]  "**Sec. 2.  PROHIBITION.**  Notwithstanding any provisions of the [Los Angeles Municipal Code] to the contrary, for a period of one year from the effective date of this ordinance or until a permanent ordinance is adopted, which establishes permanent citywide regulations regarding [m]edical[-m]arijuana [d]ispensaries, whichever occurs first:  [¶]  **A.**  No person or entity shall establish a [m]edical[-m]arijuana [d]ispensary.  [¶]  **B.**  No person or entity shall operate a [m]edical[-m]arijuana [d]ispensary."

36

sufficiently definite to prevent arbitrary or discriminatory enforcement.[22]

Although the City's medical-marijuana regulations were modified and amended in the years following the enactment of the ICO, each such modification or amendment maintained in effect the ICO's basic requirements concerning the exception to the City-wide prohibition on medical-marijuana dispensaries: to operate legally, dispensaries that were in business prior to September 14, 2007, were required to have registered with the City within 60 days of that effective date. Thus, landlords such as Braum were subject to the ICO's general prohibition and exception requirements from its effective date throughout the duration of the Emerald and Ventura leases. The language of the ICO's exception contained the reasonable degree of certainty required under due process to apprise a landlord such as Braum

---

[22] "The prohibitions specified in [s]ection 2 of this ordinance shall not apply to any [m]edical[-m]arijuana [d]ispensary established before the effective date of this ordinance and operated in accordance with State law, if the owner or operator of the [m]edical[-m]arijuana [d]ispensary complies with the following requirements: [¶] A. File the form, designated by . . . the City Clerk, and the following documentation with . . . the City Clerk within 60 days of the adoption of the [ICO]: [a City tax registration certificate; a state board of equalization seller's permit; the property lease; business insurance; dispensary membership forms; and, if needed, a county health department permit] . . . . [¶] B. This exception only applies to a facility that otherwise meets all the requirements of the [Los Angeles Municipal Code] and is open for business on the effective date of this ordinance."

of the practice to be avoided on the properties. It was therefore not void for vagueness.

To the extent defendants complain that it was burdensome for landlords to research the ever changing marijuana regulations, "[t]he mere fact that the owner of premises within [a particular zone] is required to search the zoning ordinances to discover the scope of permitted uses, cannot alone render the ordinance vague and uncertain." (*Sechrist v. Municipal Court* (1976) 64 Cal.App.3d 737, 743.)

E.    *Individual Liability*

1.    <u>Background</u>

The City named Braum as a defendant in each civil action, both in his individual capacity and as the trustee of the Trust. The City moved for summary judgment against Braum on the two causes of action asserted against him in each complaint, i.e., it sought a determination that Braum had violated the zoning code and the Health and Safety Code, both as an individual and as the trustee on behalf of the Trust. In support of its motion, the City submitted documents showing that the Emerald and Ventura dispensaries were conducting business operations at the Sherman Oaks and Studio City properties, that Braum, as trustee of the Trust, owned both properties, and that each property was being used to sell or distribute marijuana.

In opposition to the motion, Braum submitted the leases for both properties executed by him and argued the City had failed to show that the Trust, as landlord, aided and abetted the dispensaries in the operation of their businesses. But he did not

38

expressly argue that he was not individually liable for any of the violations.

Following the hearing on the motion, the trial court issued an order granting the City's motion for summary judgment as to Braum. The court's order on the motion noted that Braum was a defendant in the first and second causes of action in the Emerald and Ventura complaints, but without expressly indicating that those claims were asserted against him both as an individual and as the trustee.

During the subsequent remedies phase, Braum opposed the penalties sought by the City, arguing, among other things, that he could not be held personally liable for the civil penalties sought under either the zoning code or the Health and Safety Code. In its reply briefs, the City argued that Braum could be held personally liable and that the trial court had already made that determination.

During oral argument at the remedies hearing, Braum argued that he was not personally liable for the civil penalties sought by the City, but the trial court rejected that argument, ruling that it was awarding all of the penalties the City requested "as to the individuals . . . ."

In the subsequently entered judgments, the court ruled that the penalties would be "imposed against [d]efendant Michael Braum, individually[,] and as [t]rustee of the [Trust]."

2.      Legal Principles

"[S]ection 18000 of the Probate Code . . . provides that 'a trustee is not personally liable on a contract properly entered into in the trustee's fiduciary capacity in the course of administration

39

of the trust unless the trustee fails to reveal the trustee's representative capacity or identify the trust in the contract.' Sections 18001 and 18002 go on to state that '[a] trustee is personally liable for obligations arising from ownership or control of trust property only if the trustee is personally at fault,' and that '[a] trustee is personally liable for torts committed in the course of administration of the trust only if the trustee is personally at fault.'" (*Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1343).

A "trustee thus cannot be held personally liable under [Probate Code] section 18001 for any obligation arising from his ownership or control of trust property, nor can he be held personally liable under [Probate Code] section 18002 for any torts committed in the course of his administration of the trust, unless the party seeking to impose such personal liability on the trustee demonstrates that the trustee *intentionally or negligently* acted or failed to act in a manner that establishes personal fault. (§§ 18001, 18002; Cal. Law Revision Com. com., 54A West's Ann. Prob. Code*, supra*, foll. §§ 18001 & 18002, p. 237.) [¶] . . . A trustee who . . . acted in his representative capacity cannot be held personally liable under [Probate Code] section 18001 for an obligation . . . solely upon a showing that the obligation arose out of his ownership or control of the trust property. The imposition of such personal liability must also rest on a finding of personal fault supported by a sufficient showing that the trustee's conduct was intentional or negligent. (§§ 18001, 18002; Cal. Law Revision Com. com., 54A West's Ann. Prob. Code*, supra*, foll. §§ 18001 & 18002, p. 237.)" (*Haskett v. Villas at Desert Falls* (2001) 90 Cal.App.4th 864, 877–878 (*Haskett*).)

3.    Analysis

The evidence in support of the City's assertions of personal liability against Braum for the zoning and Health and Safety Code violations during the summary judgment proceedings was limited.  We will therefore assume that it was insufficient to demonstrate that Braum was personally liable for the zoning code and Health and Safety Code violations.

But the issue of Braum's personal liability, as opposed to that of the Trust, for the penalties was revisited by the parties and the trial court during the penalty phase.  At that point, the City had introduced further evidence showing that, prior to the filing of the civil actions, Braum had received notice of the illegality of the dispensaries and demands that they cease operation.  The City's evidence also showed that the sale and distribution of marijuana nevertheless continued at each property, causing the City to file the civil actions against the dispensaries and Braum.  The illegal activity at each property, however, continued unabated.  The City then obtained a preliminary injunction against Braum concerning the continued illegal activity by the Emerald dispensary at the Sherman Oaks property and, when the illegal activity persisted, the City obtained from the trial court an order to show cause.  The City's remedies evidence further showed that the Emerald dispensary was conducting business within 35 feet of an elementary school, an additional Municipal Code violation, and that at least one complaint had been made about a grow operation at that dispensary, the existence of which Braum denied.

When the evidence introduced during the remedies phase is viewed together with the evidence submitted in support of the

41

summary judgment motion, it supported a reasonable inference that Braum was personally at fault for the zoning and Health and Safety Code violations, either because he intentionally allowed those uses to continue despite notice and demand that they cease, or because his conduct in response to the notices, demands, and civil actions rose to the level of negligent disregard of the ongoing violations.  The trial court therefore did not err in finding Braum personally liable for the civil penalties and other relief imposed against him in each of the judgments.

## IV.   DISPOSITION

The judgment is affirmed.  Plaintiff is awarded costs on appeal.


KIM, J.


We concur:


BAKER, Acting P. J.


MOOR, J.

42

Filed 5/22/20

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DANIEL BRAUM et al., as Executors, etc., and as Trustees, etc.,<br><br>    Defendants and Appellants. | B289603, B289604<br><br>(Los Angeles County Super. Ct. Nos. BC467194, BC467495)<br><br>ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PARTIAL PUBLICATION |

THE COURT:

Good cause appearing, the opinion in the above entitled matter, filed on April 22, 2020, is hereby modified as follows:

1.    The caption shall be modified as reflected in the caption of this order.

1

2.      On page 2, second paragraph, second line, replace "clause" with "clauses of the federal and state constitutions".

3.      On page 2, footnote 1, delete the first word "Michael".

4.      On page 3, footnote 4, replace "subdivision (d)." with "subd. (d)."

5.      On page 7, first full paragraph, second line, replace "Boulevard," with "Boulevard in" and seventh line, replace "(Emerald)" with "(Emerald dispensary)".

6.      On page 8, first paragraph, seventh line, remove comma after "dispensary" and remove "dba City Organic Remedies," and ninth line insert "dispensary" after "(Ventura".

7.       On page 9, first paragraph, fourth line, replace "Emerald" with "the Emerald dispensary" and sixth line, replace "Ventura" with "the Ventura dispensary".

8.      On page 13, footnote 12, second line, replace "property" with "dispensary".

9.      On page 15, last word of the full paragraph, insert single quotation mark before the final double quotation mark.

10.    On page 16, first full paragraph, first line, replace "requests for summary adjudication" with "motion".

11.    On page 17, footnote 18, second line, replace "adjudication" with "judgment".

12.    On page 18, at the only full paragraph, fifth line, replace "Emerald" with "Sherman Oaks" and seventh line, replace "Ventura" with "Studio City".

13. On page 19, second paragraph, replace "violation at the Emerald and Ventura" with "violations at the Sherman Oaks and Studio City".

14. On page 20, first line, insert "and" between ";" and "current".

15. On page 24, second paragraph, sixth line, replace "Penal" with "Pen.".

16. On page 25, second full paragraph, eighth line, replace "underling" with "underlying".

17. On page 32, first paragraph, third and fourth lines, remove "in the trial court" and sixth line, remove close parenthesis after "729."

18. On page 40, ninth line, replace ")." with ".)"

19. On page 40, in the full paragraph, in both the ninth line and 17th line, insert "[Prob. Code,] between "§§" and "18001".

20. On page 41, first line, replace "assertions" with "assertion".

21. On page 41, last two lines, and page 42, first line, replace, "When the evidence introduced during the remedies phase is viewed together with the evidence submitted in support of the summary judgment motion, it supported" with "Viewed together, the evidence introduced during the remedies phase and during the summary judgment proceedings supported".

The filed opinion was not certified for publication in the Official Reports. Upon application of respondent and a third-

3

party, and for good cause appearing, it is ordered that the opinion shall be partially published in the Official Reports.

Pursuant to California Rules of Court, rule 8.1105(b), this opinion is certified for publication with the exception of the Discussion parts C and D.  There is no change in the judgment.

_____

BAKER, Acting P. J.          MOOR, J.          KIM, J.

4